Argued April 13, affirmed May 10, 1961

# VOLLSTEDT *v.* VISTA-ST. CLAIR, INC.

361 P. 2d 657

*Mark C. McClanahan,* Portland, argued the cause for appellant. With him on the brief were King, Miller, Anderson, Nash & Yerke, Norman J. Wiener, and Jean P. Lowman, Portland.

*William F. Thomas,* Portland, argued the cause for

respondent. On the brief were Hollister & Thomas, Portland.

Before McALLISTER, Chief Justice, and WARNER, PERRY, O'CONNELL and LUSK, Justices.

LUSK, J.

This is an action for personal injuries based on negligence in which the jury found for the defendant and the plaintiff has appealed.

Plaintiff was a tenant in the Vista-St. Clair Apartments in the city of Portland, which is owned and operated by the defendant. On a windy rainy day in March, 1959, as plaintiff was about to enter the main entrance of the apartment house, she slipped and fell on the terrazzo floor and was injured. She alleged that the defendant was negligent in creating and maintaining an uneven surface on the floor of the entryway which was dangerous when wet; in not correcting the condition, although it knew, or should have known, about it; in failing to apply slip-retardant materials to the floor and failing to cover it with a mat or other covering in order to make it safe to walk upon in rainy weather. The floor where the accident occurred was under a canopy, but on days such as the one described in the testimony it became wet from rain blown in under the canopy by the wind.

Plaintiff's assignments of error are based upon the court's failure to give certain instructions requested by her and on the submission by the court to the jury of the issue of contributory negligence. The questions presented in the brief are properly saved in the record.

As to the requested instructions, counsel's criticisms, as we understand them, are directed to the point that they are inadequate in their definition of

defendant's duty. Substantially the court instructed as follows: The court read the specifications of negligence in the complaint, later summarized them in its own language, gave the usual definition of negligence, told the jury that the standard of care required of the defendant was that of a reasonably prudent apartment house owner under like circumstances, that the defendant was required to maintain the floor in a reasonably safe condition, that plaintiff was entitled as a tenant to receive from defendant reasonable care in connection with the maintenance of the entryway, and that the burden of proof was on the plaintiff to establish one or more of the charges of negligence.

It is not questioned that the court's instructions on the duty of care owed by defendant to plaintiff were correct. *Lyons v. Lich,* 145 Or 606, 611, 28 P2d 872.

The requested instructions are as follows:

"NO. 2

"Negligence is the doing of that which a reasonably prudent person would not do under the same or similar circumstances, or the failure to do that which a reasonably prudent person would do under the same or similar circumstances. It is negligence for a landlord to fail to exercise reasonable care, with respect to that portion of the landlord's premises over which it retains control, to determine whether there is a condition thereon that constitutes an unreasonable risk of harm to tenants utilizing such portions of the premises. It is also negligence for such landlord to fail to exercise reasonable care to maintain such portion of the premises in an ordinarily safe condition for such tenants."

"NO. 3

"The plaintiff in this case, Mrs. Helen M. Vollstedt, was a tenant of defendant at defendant's

apartment house, and thus in effect was invited to use the entrance of that apartment building. As a tenant, under such circumstances, Mrs. Vollstedt was entitled to expect that defendant would use every reasonable precaution and inspection to provide her with an ordinarily safe entrance, or that it would use reasonable care to warn her of any area which was not in such condition of safety if she was not likely to discover and appreciate the danger. Such care on defendant's part was a duty owed by defendant to plaintiff, and the breach of that duty, if it occurred, was negligence."

The court did not tell the jury in so many words that it was the duty of the defendant to exercise reasonable care to determine whether there was a condition on the premises over which the defendant retained control that constituted an unreasonable risk of harm to tenants, nor that defendant should have used "every reasonable inspection" to provide plaintiff with an ordinarily safe entrance or should have used every reasonable care to warn her of an unsafe area, nor that the breach of such duty was negligence.

■ The court did not use the word "duty" in its instructions, but by giving to the jury correctly the standard of care which the defendant should exercise and telling them that it was "required to maintain the floor in a reasonably safe condition" and that plaintiff was "entitled to receive from defendant reasonable care in connection with the maintenance of this entranceway" the court did as effectively communicate to the jury the notion of defendant's duty as would have been the case had the court used the words selected for it by counsel—which of course the court was not required to do.

■ That plaintiff was not prejudiced by the failure to give these requested instructions becomes apparent

upon consideration of the central issue in this case. Terrazzo consists of marble chips in a matrix of Portland cement in a mixture of about 70 to 75 per cent marble chips and 20 to 25 per cent matrix. After it has been mixed and spread out it is ground down to a uniform surface. It is considered a decorative flooring and is used extensively in the entranceways to apartment houses and office and other buildings. It was the theory of the plaintiff that in order to reduce the slipperiness of the terrazzo floor at the entrance of the apartment house the defendant etched the surface with muriatic acid—a recognized method for that purpose—but that it was done by inexperienced men, and that as a result the acid was not uniformly applied and the surface was left rough in spots and smooth in others. The plaintiff testified that her foot slipped on one of these smooth areas, made additionally slippery because it was wet, and that this caused her to fall.

The great bulk of the evidence touching the defendant's liability was directed to the question whether the defendant had by thus improperly or inadequately treating the terrazzo with muriatic acid, created and left remaining the slippery area on which the plaintiff testified that she fell; and while, of course, it was proper for the court to submit the question of defendant's knowledge to the jury, it is not apparent that in these circumstances it was necessary to instruct the jury affirmatively upon the duty of the defendant to know of a dangerous condition on the premises, rather than negatively by permitting them to find that defendant was negligent if it did not exercise reasonable care in this regard.

■ The court was not, however, required to instruct concerning the duty of inspection or giving of a warn-

ing, as there were no specific allegations in the complaint concerning these matters.

Counsel for plaintiff have cited a number of decisions in support of their contention. We think they either present special circumstances which make them inapplicable to the present case or are not in point because they involve instructions held to be erroneous or misleading. *Walker v. Lykes Bros. S. S. Co.*, 193 F2d 772 (2d Cir. 1952), was an action under the Jones Act brought by the master of one of defendant's ships to recover damages for personal injuries sustained when a drawer of a steel filing cabinet in the plaintiff's office was dislodged by the ship's roll and struck the plaintiff's shin. The plaintiff testified that catches which held several of the drawers in place were out of order and that during the voyage he had issued orders to members of the crew to mend the catches, but that their efforts had failed. The plaintiff recovered a verdict, and the question on appeal related to the adequacy of the instructions, in connection with the defense of contributory negligence, upon the plaintiff's duty as master of the ship. The trial judge told the jury to decide whether the plaintiff had acted "as a reasonably prudent master", i.e., whether he had taken "such steps to prevent injury to himself * * * as a reasonably prudent and reasonably careful man would have taken." During the voyage the ship had put in at a number of ports and the defendant requested the court to instruct the jury specifically that if the ship became unsafe during the course of the voyage "it was the duty of the master at the next port to see that she was put in a safe and seaworthy condition" and further, that it was his duty to see that his order to fix the cabinet was carried out. The court refused to give these instructions and in the circum-

stances the rulings were held ground for reversal. Judge Learned Hand, speaking for the court, said:

"It seems to us in the light of this testimony that the judge should have directed the jury more concretely than merely to say that the plaintiff was charged with 'reasonable' efforts to see that the ship was safe and seaworthy. It is indeed a part of the jury's duty to fix the standard of care which the circumstances should evoke in any given case, and there are no general rules to govern them in their choice. Nevertheless, that does not mean that a defendant may never demand that the judge shall separate different groups of facts and suggest that they may call for different standards. In the case at bar, the plaintiff may well have discharged any duty of care on shipboard where his means were limited; but presumably much more help was available on land. Jurymen are landsmen unfamiliar with the sea; and it was proper—we think it was necessary—to make some such distinction, and especially to impress upon them the fact that a crew's duty to obey orders is not identical with a master's duty to see that his orders were carried out. Duty is one thing, obedience is another; and a ship's master for many purposes is absolute. * * *"

■ Unfortunately, as we view it, in Oregon the trial judge runs the risk of reversal for "commenting on the evidence" when he becomes as "concrete" in his instructions as Judge Hand said the judge in the case before him should have been. Our judges are not permitted that freedom of expression and direction in the charge to the jury which is enjoyed by federal judges, but for the most part must confine themselves to the statement of abstract principles of law which furnish little guidance to the jury in their task of arriving at a just verdict. For that reason alone, the *Walker* case is not a safe precedent to be followed by this

court. This aside, we do not have in the instant case "different groups of facts * * * that * * * may call for different standards." The only standard applicable to this case was that of a reasonably prudent man in the position of the defendant. This standard applied to all the charges of negligence and we think must have been so understood by the jury. Finally, an instruction similar to the first requested instruction in the *Walker* case, which would have imposed the duty on the master at the next port to see that the ship was put in a safe and seaworthy condition, would be erroneous in this case, for the duty of the owner of an apartment house towards the tenants is only to exercise reasonable care. This is what the trial judge told the jury.

These observations are in part likewise applicable to *Ryan v. United Parcel Service, Inc.*, 205 F2d 362 (2d Cir. 1953), which cites the *Walker* case as authority.

In *Kentucky & West Virginia Power Co. v. Stacy*, 291 Ky 325, 164 SW2d 537, 170 ALR 1, a judgment for the plaintiff was reversed for the reason that, among others, the instructions erroneously imposed upon the defendant the duty owing an invitee, whereas the plaintiff was only a gratuitous licensee. The court also held erroneous an instruction that the jury could not find for the plaintiff unless they believed from the evidence that the injuries occurred as a result of wanton, willful, or active negligence on the part of the defendant, saying that while the instruction would be correct in many instances, it was not in the particular case because it failed to instruct on the duty owed an innocent licensee by the possessor of the premises with knowledge of a lurking, but not apparent, danger. If, in the instant case, the court had given an erroneous

instruction on the standard of duty of the defendant towards a tenant in the apartment house, or had given any instruction which might have mislead the jury as to the status of the plaintiff and the duty owed to her by the defendant the case cited might have some application, but as neither of these things appears, it does not seem to us to be a relevant authority. *Peterson v. Chicago, M. & St. P. R. Co.,* 185 Iowa 378, 170 NW 452, involved a railroad crossing accident in which plaintiff's car was stalled on the track and struck by a train. One charge of negligence was that the defendant railroad company failed to maintain a safe highway crossing. The duty of the defendant in this regard was prescribed by a statute. A judgment for the plaintiff was reversed because as the court said the trial judge "failed to state to the jury, *in any way, what the law is,* touching the obligation of the defendant in the building and maintenance of public crossings." (Italics added.) Nothing more need be said to show the inapplicability of this case.

It is unnecessary to prolong this opinion by commenting on cases from other jurisdictions, to which our attention is called, holding that it is not sufficient to submit the issues to the jury in the language of the pleadings. In *Natwick v. Moyer,* 177 Or 486, 163 P2d 936, also cited by the plaintiff, we expressed disapproval of the charge because it omitted altogether a statement of the issues made by the pleadings and suggested that the court should not only include in its charge a statement of the issues but, where appropriate, should translate lawyers' into laymen's language. In this case the court did both.

We have examined the text of 2 Harper and James, The Law of Torts (1956) 1059-1061 § 18.8, cited in the brief, where the learned authors discuss the need of

specific instructions relative to duty as well as the breach thereof, i.e., negligence, and also Green, Judge and Jury 65-74, where the same subject is discussed and, to some extent, a contrary view expressed. We think that it would be unprofitable to pursue this subject further, as we believe that under either view the instructions were adequate to this case and free from error.

■ In our opinion, where the judge, in whatever language he may select, correctly and clearly explains to the jury the standard of care which the defendant must observe in his relationship to the plaintiff, that is to say, the defendant's duty, and it sufficiently appears that this is the standard to be applied throughout to the defendant's conduct, it is not reversible error to refuse requested instructions which reiterate the expression of duty with reference to particular issues of negligence. There may be cases where such reiteration is called for, but we think that this is not one of them.

We conclude that the assignment of error under consideration is without merit.

The defendant's answer alleged that the plaintiff was contributorily negligent in failing to keep a proper watch for her safety under the circumstances and in wearing shoes with extremely narrow heels.

■ We think that there was no error in submitting these issues to the jury. The evidence justified a finding that the plaintiff was in a hurry, that she walked at a faster than normal pace, and that just as she fell she was watching her daughter who had preceded her to the door. The plaintiff was wearing highheeled shoes, which are in evidence. The heels measure three inches in height at the rear and two and one-half inches

about at the middle, and their base, measured from front to rear, is a little less than one-half inch in width and from side to side a little over one-half inch in width. Plaintiff's footwear was one of the circumstances which the jury had the right to consider in determining whether her conduct measured up to the standard of care which she should have observed. In *McQuillan v. City of New Orleans* (1944, La App), 18 So 2d 218, the court considered a similar question. As the plaintiff was walking along a city sidewalk her shoe caught in an opening of a grating, causing her to fall. She sued the city for her injuries, alleging negligence because the opening was sufficiently large to catch a portion of the shoes worn by ladies. The court, after referring to the changing styles in women's shoes, said:

"* * * It may be that our women will wear sturdier and wider shoes [before many years hence] or it is as safe to predict narrower and flimsier ones. But must our sidewalks be altered with the prevailing mode of footgear or should the women be charged with greater or less caution as the changing styles require? We incline to the latter view * * *."

The question whether the plaintiff exercised due care under the circumstances was for the jury. We think also that the court properly submitted to the jury as an independent ground of negligence the wearing of these shoes by the plaintiff. *Heether v. City of Huntsville* (1906) 121 Mo App 495, 97 SW 239 (heels not described); *Rose v. Kansas City* (1910) 141 Mo App 278, 124 SW 1057 ("French heels" one inch wide at bottom); *Armstrong v. Yakima Hotel Co.* (1913) 75 Wash 477, 135 P 233 ("high heeled shoes"); *Taylor v. Spokane* (1918) 100 Wash 409, 171 P 249, 2 ALR 1046, Annotation 1049 (high-heeled shoes); see also Annotation 13 ALR 73, 76.

■ The plaintiff says that these old cases and, like the injured plaintiff in *McQuillan v. New Orleans,* supra, argues that the prevailing mode in women's shoes has radically changed since they were decided. "Modern women", they say, "customarily conduct their daily business attired in high heeled shoes." How extensive this practice may be, we are not advised, because there is no evidence on the subject, and we can scarcely be expected to take judicial notice of the fact.

■ But the argument based on custom has its limits. As Dean Prosser says:

"* * * every custom must meet the challenge of 'learned reason,' and can have only the evidentiary weight which its nature deserves; and * * * where common knowledge will recognize unreasonable danger, whatever everyone does may be found to be negligence." Prosser on Torts, 2d Ed, 136.

■ As Mr. Justice Holmes put it:

"* * * What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not. * * *" *Texas and Pacific Ry. Co. v. Behymer,* 189 US 468, 23 S Ct 622, 47 L ed 905.

We cannot say as a matter of law that "common knowledge" would or would not recognize unusual danger in the wearing of shoes such as the plaintiff wore at the time of the accident and under the then existing circumstances. It is the sort of question usually submitted to the wisdom of the jury as representing the consensus of the community.

The plaintiff's injuries were serious, but the case was fairly tried and the jury decided against her. There being no error, this court is without power to disturb the verdict and the judgment must be

Affirmed.