Dorothy Jean **RAMSEY** and Wayne A. **Ramsey**, her husband, Plaintiffs,

v.

**MELLON NATIONAL BANK & TRUST COMPANY**, Defendant.

Civ. A. No. 62–235.

United States District Court
W. D. Pennsylvania.

March 18, 1966.

Alexander L. Suto, Pittsburgh, Pa., for plaintiffs.

Robert A. Doyle, Pittsburgh, Pa., for defendant.

WEBER, District Judge.

This is a diversity negligence case arising from a fall on August 18, 1961 by wife plaintiff on the premises of defendant Bank, when the heel of her shoe became caught in one of the small holes of a rubber door mat placed immediately outside the entrance of the bank. The jury returned a verdict in the total amount of $20,000 for both plaintiffs, and defendant now moves for Judgment N.O.V.

The statement of the facts of the accident set forth in the opinion of Judge Rosenberg reported in D.C., 231 F.Supp. 1, recites substantially the same evidence as was produced at the second trial of this matter, except for one additional witness produced by defendant at this trial. This witness was a professional engineer who was experienced in building design and the enforcement of state building code requirements. He testified that the mat was safe for its purpose at the time of the accident, that it was of a type widely used in business establishments at that time, and that the holes and serrations in the surface were inserted for safety purposes.

On the retrial of this matter the Court has determined that plaintiffs were residents of Florida at the time of the filing of the within complaint and that the necessary diversity exists. (see 350 F.2d 874, 3rd Cir. 1965).

The defendant's principal argument is that the evidence fails to show that in maintaining the mat in its entryway it had created or maintained a condition on its property involving an unreasonable risk of harm to business visitors, under the standards set forth in § 343 of the Restatement of the Law, Torts.

Wife plaintiff was wearing a high-heeled shoe, described by a shoe salesman as a "summer shoe, medium heel, for dress or street wear." By "medium" he explained that he meant a heel between a flat heel and a spike heel, a spike heel being an inch or so higher. He testified that as of the time of the accident fifty to sixty percent of the women's shoes sold were of this type. The heels were about one-half inch in diameter at the bottom. The holes in the defendant's rubber mat were five-eighths inch in diameter.

While defendant argues that the risk offered by this mat would only extend to a small part of the population, since we must exclude men, children of both sexes,

and women who do not wear shoes of this type, yet the testimony of the manager of the retail store of a large national shoe manufacturer dealing in all types of shoes, that fifty percent to sixty percent of the women's shoes sold were of this type logically raises the inference that a substantial percentage of adult women who would visit defendant bank wore shoes of this type.

The mat was originally purchased in 1953. Plaintiff produced the seller-manufacturer of this mat who testified that in 1959 he visited the manager of defendant's bank to try to convince the bank to order a new mat because the heels worn by women in recent years had become thinner to the point where the perforations in the mat where too large for safety.

Both husband and wife testified that upon their reporting the fall to the defendant's manager of the bank he remarked that he would have to call his Pittsburgh office right away because there had been previous instances of women catching their heels in this mat.

While defendant denied such instances of prior notice, the credibility of this testimony was for the jury, and the plaintiffs are entitled to a consideration of all evidence, and all inferences arising therefrom, in the light most favorable to them. In any event the defendant, having admitted ownership and control, is charged with notice of the conditions on his property.

The question then becomes one of whether defendant, in maintaining a rubber door mat at a point just outside its glass front entry door, with perforations for draining of five-eighths inch diameter, was knowingly maintaining a condition involving an unreasonable risk to business visitors, and failed to exercise reasonable care to make the condition safe or to warn the visitors of peril which they might not discover.

Both parties agree that the rule governing defendant's liability is that stated in Restatement of the Law, Torts § 343. We agree that this expresses the law of Pennsylvania which controls in this diversity case. It has been specifically approved and adopted in Pennsylvania. See Wild v. Atlantic Refining Co., 195 F.2d 151 (3rd Cir., 1952), and Pennsylvania authorities therein cited.

Defendant has cited Nelson v. Facciola, 197 Pa.Super. 502, 179 A.2d 258 (1962), to the effect that women who wear spike heel shoes must bear the risk of injury. First it must be noted that the verdict under appeal in that case was rendered for the defendant. Furthermore, the case involved a woman plaintiff wearing heels three inches high, which measured one-eighth of an inch in width at the bottom. The plaintiff failed to use a hand rail provided. She was familiar with the nature of the stair treads, which consisted of two boards on each step laid side by side with a space between them one-eighth to one-fourth inch in width. She knew the steps, being those of the apartment house where she lived and which she traversed several times each day for one year prior to the accident. She admitted that she was aware of the construction of the steps and knew that her spike heels could catch in the crack. She admitted that she did not feel each step as she descended, nor did she calculate where to put her heel to avoid the known crack. The appellate court concluded that the questions of negligence and contributory negligence were properly submitted to the jury.

Defendant urges the rule of Yearsly v. American Stores Co., 97 Pa.Super. 275 (1929), upon us as the controlling law of Pennsylvania. There the appellate court in a per curiam decision adopted the short opinion of the trial judge who granted a non-suit. The woman plaintiff fell when her tapered heel caught in the interstices of a heating register grating on the floor of defendant's store. Plaintiff contended that the proximate cause of her fall was that the register, in falling, came out of its position because it was not fastened to the floor. The court disagreed and held that the cause was properly the wedging of her narrow heel in the grating. The court found

that the plaintiff failed to show that the grating was unusual or the opening dangerously large, and therefore had failed to show plaintiff negligent.

In Calligan v. City of Monongahela, 272 Pa. 28, 115 A. 869 (1922), the verdict was for the plaintiff. Her shoe was described as "an ordinary woman's shoe, with a 'common sense' heel", which caught in a sidewalk pavement where round pieces of glass two and one-quarter inches in diameter had been placed in the pavement to allow light to enter the vault below. Several of these were missing and plaintiff's heel caught in one of these holes. The court said at p. 29, 115 A. at p. 869:

"That the city was charged with knowledge of the fact that women would use the pavement, and that a jury, in a proper case, might find it was negligence to leave a hole therein so large that heels of the usual size would probably catch in it and throw the wearer thereof to the ground, are propositions too plain to require argument."

We feel that this rule is applicable to the instant case.

The defendant relies on the dicta of the case wherein the Court speculated: (p. 30, 115 A. p. 869) "Had the heel of plaintiff's shoe' been unusually narrow, and, by reason thereof, it had caught in the hole * * * the court below could have given binding instructions for defendant, for a municipality is not obliged to anticipate the abnormal, however fashionable it may be or become; but here, as stated * * *, the heels were of the usual size worn by women, and it was therefore for the jury to say whether or not the hole was of such a character as to naturally grasp this kind of a heel."

In the present case we have testimony that fifty to sixty percent of women's shoes sold were of plaintiff's style, the shoe was described as a medium heel; it was not a spiked heel as was the shoe in the Nelson case (supra). The jury

saw the shoe and compared it with the much higher and thinner heel of the shoe worn by Miss Dawkins, defendant's witness, an employee of defendant's bank who saw wife plaintiff immediately after her fall.

We cannot accept defendant's contention that wife plaintiff was wearing a shoe extreme in style, height or narrowness of heel, or limited to a small minority of wearers. The jury, men and women of all ages and all walks of life, had the opportunity of seeing, comparing, and applying their collective experience of life to this question and their verdict was based on substantial evidence.

The testimony in the present trial of this case was almost identical to that presented at the prior trial. The only substantial difference was that defendant presented a new witness, the building and structural expert, who testified that the mat in question was of the usual type in use at the time, that it was of the type prescribed for business buildings, that the striations and holes were for the purpose of providing drainage to keep the floor inside free from water which might be tracked in. While this testimony was produced to show that defendant followed an established or recognized practice and thus was not negligent, it is only evidence to be considered by the jury along with all of the other evidence in the case. Common usage, while a test of negligence, is not a conclusive or controlling test:

"However, customary methods do not furnish a conclusive test on the question of negligence. Maize v. Atlantic Refining Co., 352 Pa. 51, 57, 41 A.2d 850, 160 A.L.R. 449. 'In the piquant language of Mr. Justice Holmes: "What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not". Texas & Pacific R. Co. v. Behymer, 189 U.S. 468, 470, 23 S.Ct. 622, 623, 47 L.Ed. 905.' Hudson v. Grace et al., 348 Pa. 175, 181, 34 A.2d 498, 502, 150

A.L.R. 366." Donnelly v. Fred Whittaker Co. et al., 364 Pa. 387, 72 A.2d 61 (1950).

See also Diehl v. Fid.-Phila. Trust Co., 159 Pa.Super. 513 at 517, 49 A.2d 190 (1946).

■ With respect to the allegation of contributory negligence of the wife plaintiff, this was also submitted to the jury. We cannot declare this as a matter of law except where the evidence is so clear and palpable that there is no room for fair and sensible men to differ in their conclusions. McKniff v. Wilson, 404 Pa. 647, 172 A.2d 801 (1961). While the wife plaintiff had traversed this mat before and had opportunity to observe it, can we say that the size of the holes were such as to give her notice of their danger. But this mat was placed immediately next to a door, where one's attention is drawn to the handle for opening the door, and one is required to observe a certain vigilance for other persons who may arrive at the door at the same time.

"This rule should not apply in this case because reasonable men could differ as to whether one in the process of opening a door is acting negligently in not observing the condition of the floor immediately adjacent to the door. One's attention is occupied with the mechanical process of opening the door and is seldom diverted at that time to the area which is immediately adjacent to the door." Dougherty v. Phila. Nat. Bank, 408 Pa. 342, 345, 184 A.2d 238, 239 (1962).

We feel that the reasoning of the above opinion applies equally to those entering a building, as in the Dougherty case, and to those leaving, as here.

■ Furthermore, the owner of a business premises who invites business visitors to enter for its financial benefit has a special duty, as stated in Comment (d) § 343, Restatement of the Law, Torts:

"A business visitor is entitled to expect that the possessor will take reasonable care to ascertain the actual condition of the premises and, having discovered it, either to make it reasonably safe by repair or to give warning of the actual condition and the risk involved therein. Therefore, a business visitor is not required to be on the alert to discover defects which, if he were a bare licensee, entitled to expect nothing but notice of known defects, he might be negligent in not discovering. This is of importance in determining whether the visitor is or is not guilty of contributory negligence in failing to discover a defect, as well as in determining whether the defect is one of which the possessor should believe that his visitor would not discover and as to which, therefore, he must use reasonable care to warn the visitor."

We cannot find that there is no evidence of negligence for the consideration of a jury here, nor can we find the plaintiff guilty of contributory negligence as a matter of law. The motion will be denied.