POLLACK *v.* OAK OFFICE BUILDING.

1. NEGLIGENCE—EVIDENCE—BUSINESS PREMISES—DANGEROUS CONDI-
   TION—SLIPPERY FLOOR—FALL.

   Generally, a plaintiff sustaining an injury in a fall on an alleged
   slippery floor within business premises must show, as a basis
   of action, that the floor on which the fall occurred was dan-
   gerously slippery from improper waxing, or the like, at the
   time of the accident.

2. SAME—CIRCUMSTANTIAL EVIDENCE—QUESTION FOR JURY.

   Evidence of slipperiness alone may not be sufficient to establish
   that a fall on a floor was the result of a dangerously slippery
   condition caused through improper waxing, or the like, but
   evidence of excessive oil or wax, skid marks, soiled clothes,
   *inter alia*, may constitute sufficient evidence to give rise to
   a factual question as to negligence proper for jury determi-
   nation.

3. APPEAL AND ERROR—DIRECTED VERDICT—JUDGMENT NOTWITH-
   STANDING VERDICT—EVIDENCE.

   Facts are reviewed in the light most favorable to plaintiff on
   review of a trial court's refusal to grant a motion for a directed
   verdict or judgment notwithstanding the verdict.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 38 Am Jur, Negligence § 136.
[2] 38 Am Jur, Negligence §§ 136, 285, 286, 332, 333.
[3] 5 Am Jur 2d, Appeal and Error § 886.
[4] 4 and 5 Am Jur 2d, Appeal and Error §§ 112, 886.
[5] 5 Am Jur 2d, Appeal and Error §§ 886, 969.
[6] 38 Am Jur, Negligence § 97.
[7] 38 Am Jur, Negligence §§ 136, 332, 333.
[8] 38 Am Jur, Negligence § 333.
[9] 38 Am Jur, Negligence §§ 313, 314; 29 Am Jur 2d, Evidence
    §§ 305–308.
   Admissibility, on issue of defendant's negligence in respect of
   condition of place where plaintiff was injured, of evidence of
   prior accidents or injuries at same place.   70 ALR2d 167.
[10] 38 Am Jur, Negligence §§ 181, 184, 189, 190, 199, 335.
[11] 38 Am Jur, Negligence §§ 174–176, 286.
[12, 13] 38 Am Jur, Negligence §§ 181, 182, 184–194.

4. Same—Directed Verdict—Judgment Notwithstanding Verdict
—Evidence.

The test to be used in determining whether the trial court
properly refused to grant a motion for a directed verdict
or a judgment notwithstanding the verdict is whether, from
the facts viewed in the light most favorable to plaintiff,
reasonable men could honestly reach a different conclusion,
and if the answer is yes, the question is one for the jury.

5. Negligence—Evidence—Directed Verdict—Judgment Notwith-
standing Verdict.

Defendant's claim that the trial court erred in refusing to grant
his motions for a directed verdict and a judgment notwith-
standing the verdict in negligence action *held,* without merit,
where it was undisputed that plaintiff's injuries arose as a
result of a fall on defendant's floor and there was evidence
(1) that the hallway was washed and waxed weekly, (2) the
area involved was dangerously slippery so that great care
had to be exercised in the hallway as compared to other
hallways, (3) plaintiff's feet went out from under her when
she was walking slowly and carefully and while wearing low-
heeled walking shoes, and (4) skid marks and a sticky sub-
stance which was gummy and slippery were found on the
sole of plaintiff's shoe shortly after the accident, indicating
excessive wax on the floor.

6. Same—Evidence—Business Premises—Knowledge of Defect—
Dangerous Condition.

It is unnecessary for an injured party to prove that owner of
business premises had notice of dangerous condition of his
premises, where such condition had been created through the
negligent actions of his employee.

7. Appeal and Error—Sufficiency of Evidence—Negligence.

Defendant's claim that verdict for plaintiffs in negligence action
was contrary to the great weight of the evidence *held,* without
merit, where there was evidence that plaintiff fell while wear-
ing low-heeled walking shoes as the result of an unusually
dangerous and slippery condition that existed in defendant's
hallway shortly after the accident, a sticky substance which
was gummy and slippery was found adhering to the sole
of plaintiff's shoe, plaintiff's feet went out from under her
when walking slowly and carefully, and there was evidence
from which the jury could infer that defendant's janitor had
improperly maintained said hallway, causing the same to be
unusually slippery and dangerous by allowing an excessive
amount of wax to accumulate in the area.

8. NEGLIGENCE—CIRCUMSTANTIAL EVIDENCE.

The happening of an accident, together with surrounding circumstances and legitimate inferences, may establish negligence.

9. SAME—FLOORS—PRIOR ACCIDENTS—PRIOR CONDITIONS.

Defendant's claim that prejudicial error occurred in the admission of testimony concerning other accidents and prior floor conditions at places in the building other than where plaintiff fell *held*, without merit, where the record reveals (1) that there was no testimony of any prior accident, (2) that the trial judge carefully cautioned witnesses to limit their testimony to the condition of the hallway floor where plaintiff fell, and (3) defense counsel, in cross-examination, brought out from several witnesses the fact that the hallways and offices in the entire building were and had been uniformly in a dangerous and slippery condition.

10. SAME—CONTRIBUTORY NEGLIGENCE—EVIDENCE.

Defendant's claim that injured plaintiff was guilty of contributory negligence, as a matter of law, since she admittedly had knowledge of the slipperiness of the floor, *held*, without merit, where she testified to exercising care on account of her knowledge, wearing low-heeled shoes, and walking slowly and carefully, since her injury alone does not warrant a conclusion of lack of care.

11. SAME—COURT RULES—CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF.

Applicable court rules provide that contributory negligence is an affirmative defense in Michigan, with the defending party carrying the burden of offering sufficient evidence to establish such defense (GCR 1963, 111.7).

12. SAME—CONTRIBUTORY NEGLIGENCE—BUSINESS INVITEE—PRIVILEGE.

The applicable rule as to danger encountered in the exercise of a right or privilege is that, if the defendant's negligence has made a business invitee's exercise of a right or privilege impossible unless the invitee exposes himself to a risk of bodily harm, the invitee is not guilty of contributory negligence in so doing unless he acts unreasonably.

13. SAME—CONTRIBUTORY NEGLIGENCE—BUSINESS INVITEE—DANGEROUS SITUATION—STANDARD OF CARE.

A business invitee who is subjected, while exercising a right or privilege, to a dangerous situation caused through the negligence of another, need only exercise that care that a reasonably prudent person would exercise in like circumstances,

Appeal from Wayne; Bowles (George E.), J. Submitted Division 1 January 4, 1967, at Detroit. (Docket No. 1,253.) Decided June 27, 1967.

Complaint by Frances Pollack and Irwin Pollack against Oak Office Building, a Michigan corporation, as a result of injuries sustained by Frances Pollack when she fell in the hallway of defendant's building. Verdict and judgment for plaintiffs. Defendant's motions for a directed verdict and for a new trial were denied. Defendant appeals. Affirmed.

*Gussin, Weinstein & Kroll (Arnold M. Gordon,* of of counsel), for plaintiffs.

*Ward, Plunkett, Cooney, Rutt & Peacock (Robert J. Hummel* and *William M. Donovan,* of counsel), for defendant.

Holbrook, J. This is a negligence case brought for injury resulting from slipping and falling on an allegedly excessively waxed hallway floor. The case was tried before a jury with verdict for plaintiffs. Defendant made a motion for judgment *non obstante veredicto* or a new trial and upon denial of the motion has appealed.

Defendant, Oak Office Building, Inc., raises the following questions for review: (1) Was error committed by the trial court in denying defendant's motion for a directed verdict on the ground that no evidence was introduced to make out a factual question for the jury as to defendant's negligence? (2) Whether the verdict was contrary to the great weight of the evidence. (3) Whether error was committed in admitting evidence of prior floor conditions in other locations. (4) Whether defendant's motion for a directed verdict should have been granted be-

cause of plaintiff's contributory negligence as a matter of law.

The pertinent facts appear to be as follows: Plaintiffs are husband and wife. On the date of the accident, September 6, 1962, and for 1 year prior thereto, plaintiff wife, Frances Pollack, was employed as an office clerk. Her employer, Anesthesiologist Service, leased office space on the uppermost floor of defendant's office building, on West 8 Mile road. A lavatory was located on the same floor, at the end of a tile hallway, 7 to 8 steps away from a door to the leased office space. Shortly before 12 noon, on the stated date, plaintiff headed for the lavatory to wash up for the lunch hour. In the general area of the hallway fronting the lavatory doorway she slipped and fell. There were no eyewitnesses. Plaintiff testified that when she slipped, one foot was entering the lavatory and the other foot was still in the hallway.

The testimony of plaintiff and another witness indicated that she landed on her back with one leg pinned against the hallway wall immediately in front of the lavatory threshold, facing the opposite direction to the lavatory. Plaintiff testified she was wearing walking shoes with 1-inch stacked heels; that she was walking slowly and carefully and experienced the sensation of her feet going out from under her; that her fall was caused by "a slippery floor." A fracture of the right femur or thigh bone was sustained in the fall.

According to plaintiff the floors were generally in a slippery condition throughout the building. A month or two prior to the accident she had complained to Mrs. Miller, wife of one of the owners of the building, concerning a slippery area on the landing of the stairway coming from the uppermost floor. No complaint was made of the hallway area where the accident occurred.

Plaintiff testified as to "skid marks" present on the sole of her shoe after the accident. She was informed of this by her mother who found them the day after plaintiff's hospitalization. Her mother subsequently testified as to "a sticky substance" which was "gummy and slippery" adhering to the sole of plaintiff's shoe. No objection to this testimony was made, in fact, defense counsel cross-examined plaintiff's mother about this substance in great detail.

Maintenance of defendant's building, including washing and waxing of floors, was done by a janitor, Edward Lampkins. Hired by Mr. Miller, he worked at the Oak Office Building on Tuesday and Thursday of each week. A number of times plaintiff observed him washing and waxing the office floor. Supporting testimony by Janet McConkey, who worked in another office on the same floor, was given. The trial court cautioned her, and subsequent witnesses, to limit their testimony to the area of the accident. Her testimony was that the floor was unusually slippery. She further testified that in the course of her employment she had occasion to observe how the floor was cared for and maintained. She said the janitor waxed the floor every time he washed it. She denied ever seeing him remove the old wax before applying a new coat.

Two other witnesses, working on the same floor as plaintiff, testified that the hallway floor where the accident happened, was extremely slippery and great care had to be taken to avoid slipping and falling. Defense counsel on cross-examination, elicited statements from these witnesses that a slippery and dangerous condition existed uniformly in the hallways and offices of the entire building.

Mr. Miller, the first witness called by defendant, testified that floor supplies were purchased from

Abbot Supply Company and they had sent out an expert to show the janitor how to wash and wax the building's floors. He further testified to seeing the janitor pour wax directly on the floor before spreading it, and that they purchased about 10 gallons of wax per year. He had not received any complaints of slipperiness.

The janitor, Mr. Lampkins, defendant's next witness, denied that anyone ever showed him how to wash or wax the floors. He admitted waxing the floor on the Thursday before September 6, the date of the accident, and washing it with a solution of about 2 ounces of SD–20, a detergent, in *a pail* of water on the following Tuesday. The washing was intended only to remove scuff marks and dirt, but would leave the wax and polish. He also stated that he waxed the floors about every 3 or 4 months.

The final witness for the defense, Mr. Genser, a chemist of Abbot Supply Company, testified that he had told Mr. Lampkins to use 1 to 2 ounces of SD–20 *per gallon* of water for normal washing purposes. Also, he was asked to use a stronger concentration of 10 to 12 ounces *per gallon* 3 to 4 times per year in removing the old wax before applying a new wax coating. He said the proper way to apply a new wax coating called for the application of several thin coats of wax allowing for proper drying between coats. He then testified that if the janitor followed these instructions, a buildup of wax could not occur; and conversely, if these instructions were not followed, a buildup and accumulation of wax would be present.

Defendant's motion for a directed verdict was based on defendant's claim that: There had been no testimony presented by plaintiff that the wax had been applied in a negligent manner, or that there was an excessive amount of wax on the floor.

Generally a plaintiff sustaining an injury in a fall on an alleged dangerous slippery floor within business premises must show as a basis of action, the floor on which the fall occurred to be, in fact, dangerously slippery from improper waxing, or the like, at the time of the accident. See Annotation 63 ALR2d 591. While evidence of slipperiness alone will be insufficient, evidence of excessive oil or wax, skid marks, soiled clothes, *inter alia,* will constitute sufficient evidence to give rise to a factual question proper for jury determination. *Galarno* v. *Great Atlantic & Pacific Tea Co.* (1932), 260 Mich 113; *Hulett* v. *Great Atlantic & Pacific Tea Co.* (1941), 299 Mich 59.

In the Case of *Sparks* v. *Luplow* (1963), 372 Mich 198, Mr. Justice T. M. KAVANAGH, at p 202 states:

"It is a well-settled principle of law that on review of a trial court's refusal to grant a motion for a directed verdict or judgment *non obstante veredicto,* the facts are reviewed in the light most favorable to plaintiff. *Tacie* v. *White Motor Co.,* 368 Mich 521, 527. The test used is whether from the facts in the light most favorable to plaintiff, reasonable men could honestly reach a different conclusion. If the answer to this is 'yes,' the question is for the jury. *Anderson* v. *Gene Deming Motor Sales, Inc.,* 371 Mich 223."

In the present situation the evidence viewed in the light most favorable to plaintiff as to defendant's negligence, is: That the hallway floor was washed at least once every week at which time it was also waxed, the area involved was in a dangerously slippery condition so that great care had to be exercised in the hallway as compared to other hallways, plaintiff's feet went out from under her at a time when she was walking slowly and carefully while wearing low-heeled walking shoes, and the presence

of "skid marks" and "a sticky substance" which was "gummy and slippery" on the sole of plaintiff's shoe indicated the presence of excessive wax on the floor. This evidence was uncontradicted.

Plaintiff's case herein is clearly distinguishable from that of *Yearsley* v. *City Bank* (1960), 361 Mich 574, cited by defendant. There plaintiff, about to leave defendant bank, slipped on the floor. On failing to show an unusual condition which caused her fall, the Court held that an actionable element of negligence as charged was not proven. In contrast, plaintiff's evidence in the instant case, indicated a heavily waxed floor unusual in condition to the point that a dangerous condition was present. It showed something more than the occurrence of an unfortunate accident absent negligence. *Zeglowski* v. *Polish Army Veterans Association of Michigan, Inc.* (1961), 363 Mich 583.

Since defendant, through the actions of its janitor, created the dangerous condition, the requirement of notice to defendant becomes unnecessary. *Hulett* v. *Great Atlantic & Pacific Tea Co., supra.*

An issue of fact as to defendant's negligence was properly raised and submitted to the jury for determination. Therefore, defendant's contention that the verdict was against the great weight of the evidence is untenable.

What we said in considering defendant's first question is also applicable to the present issue, and we add that a jury could find excessive application of wax in the area of the floor where plaintiff fell from the testimony of Mrs. McConkey.

"*Q.* Would he [the janitor] wash the floor every week?

"*A.* Yes.

"*Q.* How often would he wax the floor, do you know?

"*A.* When he washed it.

"*Q.* Then it is your testimony that he waxed the floor every time he washed it?

"*A.* Yes."

Moreover defendant's negligence in maintenance of the floor's condition could be inferred from the testimony of the janitor as to his use of detergent SD–20 which was contrary to the recommendations of Mr. Genser. Mr. Lampkins testified in part as follows:

"Now, when you washed the floor, you used a solution of SD–20, two ounces?

"*A.* About two ounces.

"*Q.* And you put that in a pail of water?

"*A.* Yes. * * *

"*Q.* So, then, assuming that her occurrence happened on Thursday, September 6, 1962, then it is your testimony, to the best of your knowledge, that you waxed the floor the Thursday before?

"*A.* Right.

"*Q.* Is that right?

"*A.* Yes.

"*Q.* Now, you washed the floor the following Tuesday, is that right?

"*A.* I did.

"*Q.* In other words, the Tuesday between the day of the accident and the day of the waxing?

"*A.* Yes.

"*Q.* Is that right?

"*A.* Yes.

"*Q.* Did you wash the wax off the floor on that Tuesday, or did it stay down?

"*A.* No, I used a solution; two ounces of SD–20, but it don't take, don't take all of the wax off.

"*Q.* You didn't wash the wax off, did you?

"*Mr. Hummell.* Well, now—all right.

"*The Witness.* Two ounces of SD–20 won't remove all the wax.

"*Q. (By Mr. Gordon).* How much of it will it remove, do you know?

"*A.* No, I couldn't say how much it would remove.

"*Q.* Will it remove any?

"*A.* I don't know if it removes the wax or not, but it removes the scuff marks on the floor.

"*Q.* Just the scuff marks?

"*A.* Yes."

Mr. Genser testified in part as follows:

"*A.* I suggested, before he got into this process which we had set up for him, the maintenance program, that he did strip the floors first, to then remove all wax, in other words, stripping the old wax off the floor.

"*Q.* And did you tell him how to do that, sir?

"*A.* Yes.

"*Q.* Did you tell him the solution to use?

"*A.* Yes.

"*Q.* And what solution was that?

"*A.* Ten to one, 12 ounces.

"*Q.* Now, with respect to Mr. Lampkins' instructions from you regarding washing the floor, did you give him any instructions regarding that?

"*A.* Yes.

"*Q.* What were these?

"*A.* I did. I told him to use between 1 and 2 ounces of the material per gallon of water as a general maintenance form to remove the general soil after the floor had been rewaxed, and to remove any excess oxidation or excess wax which would tend to accumulate.

"*Q.* A little louder, Mr. Genser, please.

"*A.* I told him—

"*Q.* All right. In other words, then, a solution of two ounces of SD–20 in a pail of water would be

sufficient to remove the breakup of the wax, is that correct? I call it breakup.

"*A.* To remove the oxidized wax or wax like your car finish oxidizes when it dries out, a little bit of softness.

"*Q.* Now, with respect to Abbot's Floor Saver 400, is that the wax which you recommended to Mr. Lampkins for use in this building?

"*A.* Yes.

"*Q.* And how did you tell him to apply it?

"*A.* Well, first to clean the floor thoroughly and then to apply first one very thin coat of wax, let it dry, either buff it then or leave it plain, depending on how much shine he wanted, then to go back and apply a second coat of wax, a second thin coat of wax, and then at a later date, if he chose, he could put a third coat on, but at least allowing a half an hour between each coating."

From the evidence taken as a whole, the jury could reasonably infer that wax had accumulated in the area where plaintiff fell as a result of improper and repeated applications so that an unusual slippery and dangerous condition existed. The negligent maintenance of the floors from improper use of detergent SD–20 similarly might also be inferred. The happening of an accident, together with surrounding circumstances and legitimate inferences, may establish negligence. *Wolverine Upholstery Company* v. *Ammerman* (1965), 1 Mich App 235. We conclude there was sufficient evidence to sustain the verdict of the jury.

Defendant's third issue raises the question of whether the court improperly admitted testimony showing prior floor conditions at other locations in the building.

*Berry* v. *Fruehauf Trailer Co.* (1963), 371 Mich 428, relied on by defendant, concerns the admission

of a prior accident under similar circumstances to the accident out of which the cause of action arose.

Since testimony in the present case went only to prior floor conditions, no mention being made of a specific prior accident, *Berry* v. *Fruehauf Trailer Co., supra,* is not analogous.

The record reveals the trial judge to have proceeded carefully, often cautioning witnesses to limit their testimony to the condition of the hallway floor fronting the lavatory. A picture of the accident area, defendant's exhibit #2, was used in limiting testimony to the accident area. Defense counsel objects to certain testimony as to the floor's condition beyond the accident area itself. However, no objection was raised to some of this now challenged testimony; other testimony to which objection was made was expanded in cross-examination by defense counsel's own questioning.

Defendant's brought out on cross-examination of several of plaintiff's witnesses that the hallways and offices in the entire building were and had been uniformly in a dangerous and slippery condition.

Efforts by both counsel and trial court sufficiently restricted the testimony of witnesses to the area in question. We find, under the circumstances, no material confusion of issues to have resulted as claimed by defendant. Grounds for reversible error here are lacking.

Finally, defendant contends that since plaintiff had knowledge of the slipperiness of the floor, she is guilty of contributory negligence as a matter of law. It is true that plaintiff knew the floor to be slippery, but she testified to exercising care on account of her knowledge. She testified to wearing low-heeled shoes and walking slowly and carefully. Her injury alone does not warrant as matter of law a conclusion of lack of care.

Under GCR 1963, 111.7, contributory negligence is an affirmative defense in Michigan. The defending party carries the burden of offering sufficient evidence to establish this defense.

The applicable rule as to danger encountered in the exercise of a right or privilege is found in 2 Restatement (Second), Torts, § 473, p 523: "If the defendant's negligence has made the plaintiff's exercise of a right or privilege impossible unless he exposes himself to a risk of bodily harm, the plaintiff is not guilty of contributory negligence in so doing unless he acts unreasonably." Also, see *Lebovics v. Howie* (1943), 307 Mich 326, 331. In view of this rule a person in a dangerous situation need only exercise the care that a reasonably prudent person would exercise in like circumstances. Under the prevailing evidence, whether plaintiff met this test, was a question for the jury.

After a careful and complete review of the record and issues raised, we find no error present.

Affirmed. Costs to appellees.

LESINSKI, C. J., and LEVIN, J., concurred.