## CORBETT v. HECK

### OPINION OF THE COURT

1. NEGLIGENCE—FALL—RUBBER MAT—UNREASONABLE RISK—DIRECTED VERDICT.

   Directed verdict for defendant was proper in a negligence action where plaintiff claimed that she sustained injuries when she left defendant's business establishment, caught her heel in a rubber entrance mat, fell and broke her leg, but failed to establish proof of any unreasonable risk.

2. NEGLIGENCE—POSSESSOR OF LAND—UNREASONABLE RISK.

   A possessor of land is subject to liability for bodily harm caused to visitors by a natural or artificial condition on the land if, but only if, he knows or by the exercise of reasonable care could discover the condition which, if known to him he would realize as involving an unreasonable risk to them.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 38 Am Jur, Negligence §§ 344–361.
[2] 38 Am Jur, Negligence §§ 23–26, 97, 134.
[3, 5, 9] 38 Am Jur, Negligence §§ 134, 344–361.
[4, 6] 38 Am Jur, Negligence § 34.
[7] 38 Am Jur, Negligence §§ 4, 131–138.
[8] 38 Am Jur, Negligence §§ 131–138.
[10] 38 Am Jur, Negligence § 211.

DISSENTING OPINION
LEVIN, P. J.

3. NEGLIGENCE—DOORMAT—JURY QUESTION.
   *Whether a defendant exercised due care in using a v-link rubber doormat which could readily engage and dislodge the heel of a lady's shoe is a jury question in a negligence action.*

4. NEGLIGENCE—EVIDENCE—CUSTOM—REASONABLE CARE.
   *Evidence of a custom is no excuse and will not bar a plaintiff's negligence action, but it is a factor which can be properly submitted to a jury on the question of whether a defendant exercised reasonable care.*

5. NEGLIGENCE—PROPERTY—OCCUPIERS—GLASS DOORS.
   *Occupiers of property have been found guilty of negligence in using unmarked glass doors or panels even though they are an accepted method of construction and it is common knowledge that they are used extensively.*

6. NEGLIGENCE—GENERAL PRACTICE—REASONABLE CARE.
   *The fact that a negligent practice is general does not transform it into reasonable care.*

7. NEGLIGENCE—PROPRIETOR—CUSTOMERS.
   *A proprietor of a business establishment is not an insurer of the safety of his customers but it is his duty to use due care to make them reasonably safe.*

8. NEGLIGENCE—PROPRIETOR—PREMISES.
   *Failure of a proprietor of business premises to take reasonable precautions to make his premises reasonably safe is negligence.*

9. NEGLIGENCE—REASONABLE MAN—DOUBTFUL CASES—JURY QUESTION.
   *Negligence question of what a reasonable man would have done under the circumstances is to be determined in all doubtful cases by a jury.*

10. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—HIGH HEELED SHOES.
    *Whether wearing of high heeled shoes in conformity with feminine fashion constitutes contributory negligence is a jury question.*

Appeal from Saginaw, Fred J. Borchard, J. Submitted Division 3 January 7, 1969, at Grand Rapids.

(Docket No. 2,991.)   Decided December 10, 1969.
Application for leave to appeal filed December 30,
1969.

Complaint by Maxine Delores Corbett against Erwin J. Heck for injuries sustained in a fall when leaving defendant's place of business.   Judgment for defendant.   Plaintiff appeals.   Affirmed.

*Joseph J. Trogan,* for plaintiff.

*Stanton, Davidson & Carl (Robert G. Chaklos,* of counsel), for defendant.

Before: LEVIN, P. J., and HOLBROOK and DANHOF, JJ.

HOLBROOK, J.   In this action plaintiff brought suit against defendant claiming damages arising out of a fall sustained by plaintiff on leaving defendant's business establishment on May 30, 1962.

Plaintiff testified that she had been in defendant's place of business two or three times before.   The evidence indicates that plaintiff did not notice, on entering defendant's premises, a rubber mat located at the entrance.   As plaintiff was leaving the premises she stepped down 4 in. from the floor level to the rubber mat in passing through the entrance door which was held by her husband, apparently caught her left heel in the mat and fell, breaking her leg.   At the time of the fall, plaintiff was wearing 2 in. high-heeled shoes which were about 1/2 in. across on the bottom of each heel.   At the close of plaintiff's proofs, defendant made a motion for directed verdict.   The trial court in granting the motion stated:

"Examining the proofs in this matter as offered by the plaintiff in a light most favorable to the plaintiff, the court is of the opinion that the defendant's motion for a directed verdict should be granted.

"The court would rule that the plaintiff has not made a case for the jury and that plaintiff did not prove any actionable negligence whatsoever.

"The negligence of the defendant in this case is predicated upon the theory, as the court sees it, that the defendant was bound to know the size of the heels of its customer's shoes and as a reasonably prudent man should have anticipated that the accident, as happened on the mat as testified to, was likely to happen to customers using reasonable care for their own safety.

"The court further finds from the evidence in this case that the mat as used as testified to in the case is an ordinary mat and is in common usage in this section of the country.

"The court finds that the mat in question is very similar to the mat used in the case of *Nash* v. *Lewis* (1958), 352 Mich 488, except as to the overall size as is indicated by plaintiff's exhibits 4, 5, 6 and 7.

"The court further finds that the complaint of the plaintiff does not indicate that there was anything inherently dangerous in the mat used in the entranceway except to state as follows from paragraph three of the complaint:

" '* * * that the defendant negligently owned, placed and maintained a mat at the front entrance of said establishment at the time and place therein stated.'

"Numeral four:

" '* * * that said mat had many triangular shaped sections.'

"Numeral five:

" '* * * that the area inside the triangular shaped section was empty which created a space in each triangle.'

"Numeral six:

" '* * * that as plaintiff attempted to leave the premises of the said defendant and at said time and place the heel of her shoe was caught in said mat causing her to trip and to fall.'

"The court further finds that the standard of care as set forth in 2 Restatement of Law, Torts, Negligence, under the title of 'Business Visitor', § 343, is applicable in this case as the court rules it was applicable in *Nash* v. *Lewis,* and I quote:

" 'A possessor of land is subject to liability for bodily harm caused to visitors by a natural or artificial condition thereof, if, but only if, he knows or by the exercise of reasonable care could discover the condition which, if known to him, he would realize as involving an unreasonable risk to them.'

"And the court finds from the testimony in this case that plaintiff has not established proof of any unreasonable risk.

"The court would rule that to submit the case to the jury, on the proofs as offered by the plaintiff, would only lead to guess, speculation and conjecture on behalf of the jury.

"The court would rule that this was an unfortunate accident without negligence on behalf of the defendant from proofs as submitted by the plaintiff."

The applicable law governing this case is succinctly set forth in the cases of *Humphries* v. *Mc-Crory-McLellan Stores Corporation* (CA 4, 1966), 358 F2d 901; *Serinto* v. *Borman Food Stores* (1968), 380 Mich 637; and *Yearsley* v. *City Bank* (1960), 361 Mich 574.

We conclude, after a careful review of the record, that the trial court did not commit error in granting defendant's motion for a directed verdict.

Affirmed.   Costs to defendant-appellee.

DANHOF, J., concurred.

LEVIN, P. J. (*dissenting*). As she walked out of the front door of the defendant's tavern, Maxine Corbett, the plaintiff, caught her heel in an opening in a doormat, fell and broke a leg. The trial judge and the majority hold as a matter of law that the defendant was not negligent in using the particular doormat upon which she tripped. The trial judge stated that the mat "is an ordinary mat and is in common usage in this section of the country."

The doormat is, indeed, commonly seen. The rubber links that comprise the mat are of identical size, several inches long. They are laid out in rows from left to right. Each row is fastened at the top and bottom by metal bars running the length of the row. As so laid out, the links form continual rows of "V"s, *viz.:*

By reason of the design there are a large number of interstices in the mat.

The widespread use of these rubber mats is, no doubt, some evidence that reasonable men use them. The question before us is not, however, whether some or many · reasonable men use such mats, but, rather, whether *all*[1] reasonable men would agree that the defendant exercised due care in using a doormat which could so readily engage and dislodge the heel of a lady's shoe.

---

[1] *Normand* v. *Thomas Theatre Corporation* (1957), 349 Mich 50, 58; *Beach* v. *City of St. Joseph* (1916), 192 Mich 296, 301; *Sadowski* v. *The Michigan Car Company* (1890), 84 Mich 100, 105.

Mr. Justice Holmes succinctly analyzed the issue in *Texas & P. R. Co.* v. *Behymer* (1903), 189 US 468, 470 (23 S Ct 622, 623, 47 L Ed 905, 906):

"What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it is usually complied with or not."

Dean Prosser has observed:

"There can certainly be such a thing as customary negligence, as the unchecked habit of jaywalking in some communities will suggest. * * * And if the only test is to be what has been done before, no industry or group will ever have any great incentive to make progress in the direction of safety. * * * Much the better view, therefore, is that of the great majority of the cases, that every custom is not conclusive merely because it is a custom, and that it must meet the challenge of 'learned reason' and be given only the evidentiary weight which the situation deserves." Prosser, Law of Torts (3d ed), § 33, p 170.

In *Stapleton* v. *Furniture Exhibition Building Co.* (1920), 209 Mich 385, the plaintiff's injury was caused by a defective bolt in an elevator. It was not customary to remove such bolts for inspection. The Michigan Supreme Court ruled that evidence of that custom (p 392) "would be no excuse and would not bar the plaintiff's right of action, but would be one of the factors which could be properly submitted to the jury on the question of whether the defendant exercised reasonable care."

The glass door and wall cases illustrate the principle that is involved. In a considerable number of cases, occupiers of property have been found guilty of negligence in using unmarked glass doors or panels even though they are an accepted method

of construction and it is common knowledge that they are used extensively in commercial buildings and, more recently, in private homes.[2]

The same principle has been applied where doormats in common use are involved. In *Blumberg* v. *M. & T. Incorporated* (1949), 34 Cal 2d 226 (209 P2d 1), a closely divided California Supreme Court declared:

"Reasonable inquiry and inspection would have informed the property owner that it was maintaining in the lobby a mat with openings likely to retain or hold the heel of a shoe such as is customarily worn by a large number of women in San Francisco. Moreover, whether the nature of the mat was obvious to [the plaintiff] was a question of fact for the determination of the jury. The claim that the mat in question was widely used is no legal excuse for the maintenance of a dangerous condition. The fact that a negligent practice is general does not transform it into reasonable care."[3]

The divergence of opinion evidenced by the division of the court in the last cited case and in the cases cited in footnote 3 emphasizes the necessity of sending this question to the jury. It shows that all reasonable minds do not necessarily reach the same conclusion on this question. As cogently stated in a recent opinion signed by four justices of our Supreme Court:

---

[2] See *Jiffy Markets, Inc.,* v. *Vogel* (CA8, 1965), 340 F2d 495; *Kanner* v. *Best Markets, Inc.* (1958), 188 Pa Super 366 (147 A2d 172); *cf. Scott* v. *Liebman* (Tex S Ct, 1966), 404 SW2d 288. Anno: Liability of proprietor of premises open to public for injury occasioned by one walking into or colliding with a glass or plastic door, panel or wall, 68 ALR2d 1204.

[3] Similarly, see *Ramsey* v. *Mellon National Bank & Trust Company* (D Pa, 1966), 251 F Supp 646; see, also, earlier opinion (1964), 231 F Supp 1. *Contra: White* v. *Northwestern Bank Building Company* (1968), 281 Minn 33 (160 NW2d 545) (three justices dissenting); *cf. Humphries* v. *McCrory-McLellan Stores Corporation* (CA4, 1966), 358 F2d 901 (one judge dissenting). Three justices dissented in *Blumberg,* cited in the accompanying text.

"[I]t appears that the Brethren standing for affirmance of these instructed verdicts are convinced that the Brethren standing for jury verdicts are either unreasonable men or that they have unreasonable minds." *Wolfgram* v. *Valko* (1965), 375 Mich 421, 433, per BLACK, J.

In *McKinney* v. *Yelavich* (1958), 352 Mich 687, 691, the Michigan Supreme Court warned against substituting "specific roles[4] of behavior for a general standard of care." Yet, once again the attempt is made to establish a specific rule of behavior for the general standard of care; the use of a V-link doormat is held indisputably to constitute the exercise of due care. Oft-cited and oft-quoted *Van Steinburg*[5] warns against judges making their "own opinion of what would be generally regarded as prudence a definite rule of law."

There is no issue in this case as to what is the standard of care; there is complete agreement that the rule is well settled that a proprietor of a business establishment is not an insurer of the safety of his customers but that it is his duty to use due care to make them reasonably safe.[6] Thus, it is negligence for a proprietor to fail to take reasonable precautions to make his premises reasonably safe. In *Ackerberg* v. *Muskegon Osteopathic Hospital* (1962), 366 Mich 596, the Michigan Supreme Court declared that it was a jury question whether a hos-

---

[4] Although the word "role" appears in this quotation, it appears from other expressions in the opinion that this is a misprint and that the word "rule" was intended. See pp 692, 693, 695, 696, 697, 699, where the word "rule" is used.

[5] *Detroit & M. R. Co.* v. *Van Steinburg* (1868), 17 Mich 99, 120.

[6] *Shorkey* v. *Great Atlantic & Pacific Tea Co.* (1932), 259 Mich 450, 452.

Where, as here, the defendant himself created the condition, it is not necessary to show that the defendant had notice of the condition. *Hulett* v. *Great Atlantic & Pacific Tea Co.* (1941), 299 Mich 59, 66. The majority's reliance on *Serinto* v. *Borman Food Stores* (1968), 380 Mich 637, is misplaced as there the sole issue concerned the question of notice.

pital was negligent in failing to construct a guard rail on its emergency entrance platform. Similarly, it is a jury question whether the defendant in this case took proper precautions when he put a V-link doormat in the plaintiff's path.[7]

Defendant relies on *Shorkey* v. *Great Atlantic & Pacific Tea Co.* (1932), 259 Mich 450. In that case, the plaintiff tripped on a hot-air register. The opinion dealt solely with the issue of contributory negligence and expressly omitted discussion of the issue of primary negligence. Also, hot-air registers, in contrast with a doormat in an entranceway, need not be walked upon.

Another case cited by the majority, *Yearsley* v. *City Bank* (1960), 361 Mich 574, is also distinguishable. In that case the plaintiff was unable to show an unusual condition which caused her fall and, thus, the claim of negligence was not proved.

More in point is *Hanshaw* v. *City of Port Huron* (1933), 265 Mich 84. In that case it was held that whether the defendant city's failure to correct a slot in a sidewalk "of such size, shape and character as to form a trap in which women's heels could be caught," constituted negligence, was a question to be decided by the jury as the trier of fact. Similarly, see *Cornell* v. *City of Ypsilanti* (1920), 212 Mich 540, 547.

*Nash* v. *Lewis* (1958), 352 Mich 488, the principal decision relied on by the trial judge (see majority opinion pp 711, 712), concerned a plaintiff who slipped on a doormat. She alleged that pebbles lodged underneath the mat created a dangerous condition and should have been removed by the defend-

---

[7] See, also, *Miller* v. *Miller* (1964), 373 Mich 519, 524 (question was whether a defective door was a dangerous defect). Similarly, see *Clark* v. *Dalman* (1967), 379 Mich 251 (question was whether it was negligence to fail to warn an inspector that an elevated storage tank had been coated with an extremely slippery substance).

ant. There was no allegation that the plaintiff's heel had caught in the doormat; she did not contend that the use of the mat was itself negligence. The *Nash* case illustrates the danger warned against in *McKinney* v. *Yelavich, supra,* of attempting to glean from cases specific rules of behavior as substitutes for the general standard of care. As the *McKinney* Court pointed out, such rules frequently have their (p 696) "origin in a justifiable holding in a particular fact situation. By lazy repetition the holding becomes a 'rule,' entirely divorced from its creative facts. It grows as an excrescence of injustice until its very strength concentrates a court's attention upon it".

There is no occasion today to create a doormat rule in Michigan. It is not the function of trial or appellate courts to put their *imprimatur* on one doormat and deny it to another.

True, leaving the matter to juries makes it likely that different results will be reached by different juries on exactly the same facts. One jury may think that the use of a V-link doormat is reasonable, while another may reach an opposite result. That is the nature of the jury system. It assumes that the factual issue is doubtful; that all reasonable men would not agree.[8] Indeed, the case where all reasonable men must agree is precisely the case, and the only case, which may properly be taken from the jury.

"Since it is impossible to prescribe definite rules in advance for every combination of circumstances which may arise, the details of the standard must be filled in in each particular case. The question then is what the reasonable man would have done under the circumstances. Under our system of procedure,

---

[8] See *Wamser* v. *N. J. Westra & Sons, Inc.* (1967), 9 Mich App 89, 96, and *Uren* v. *Toth* (1966), 5 Mich App 170, 171, 172.

this question is to be determined in all doubtful cases[9] by the jury, because the public insists that its conduct be judged in part by the man in the street rather than by lawyers, and the jury serves as a shock-absorber to cushion the impact of the law. The question usually is said to be one of fact, but it should be apparent that the function of the jury in fixing the standard differs from that of the judge only in that it cannot be reduced to anything approaching a definite rule." Prosser, Torts (3d ed), § 36, p 208.[10]

Neither the trial judge nor the majority found it necessary to discuss defendant's claim that the plaintiff was guilty of contributory negligence. Whether the wearing of high heels in conformity with feminine fashion constitutes contributory negligence involves the same basic concepts previously discussed on the issue of the common use of doormats. The fact that such heels are in common use is some evidence that their use does not constitute negligence. Nevertheless, a jury might properly find that their use constitutes negligence. The issue is peculiarly one for jury resolution.[11]

The plaintiff, Maxine Corbett, could not have left the defendant's premises without walking over the V-link doormat. A customer, in such a case, is required to exercise only the degree of care that a reasonably prudent person would exercise in like circumstances.[12]

I would reverse and remand for a new trial.

[9] See *Sadowski* v. *The Michigan Car Company, supra,* fn. 1.

[10] Similarly, see *Cummings* v. *Grand Trunk W. R. Co.* (1964), 372 Mich 695, 698.

[11] See *Vollstedt* v. *Vista-St. Clair, Inc.* (1961), 227 Or 199, 211 (361 P2d 657, 662).

[12] See *Pollack* v. *Oak Office Building* (1967), 7 Mich App 173, 186.

"If the defendant's negligence has made the plaintiff's exercise of a right or privilege impossible unless he exposes himself to a risk of bodily harm, the plaintiff is not guilty of contributory negligence in so doing unless he acts unreasonably." 2 Restatement Torts, 2d, § 473, p 523.