NASH v. LEWIS.

1. Appeal and Error—Judgment Notwithstanding Verdict—Evidence.
   Evidence is viewed in the light most favorable to plaintiff on appeal from judgment for defendant notwithstanding verdict for plaintiff.

2. Negligence—Business Visitors—Unreasonable Risk of Danger.
   A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them.

3. Same—Door Mat at Tavern Doorway—Knowledge of Dangerous Condition.
   Evidence presented in tavern patron's action against owner for injuries sustained when plaintiff fell, at 9 p.m., on a commonly-used heavy 17x25-1/2-inch rubber and fabric-strip door mat so designed as to provide a maximum friction on any surface, and placed on concrete landing at public tavern doorway, which mat slipped as she stepped down upon it, and there being testimony that grit and little pebbles were on the landing, *held*, insufficient to charge tavern owner with negligence in the absence of proof that a dangerous condition had existed or that defendant had either actual or constructive knowledge thereof.

Appeal from Oakland; Holland (H. Russel), J. Submitted April 10, 1958. (Docket No. 36, Calendar No. 47,269.) Decided June 11, 1958.

References for Points in Headnotes
[1]  3 Am Jur, Appeal and Error § 945.
[2, 3]  38 Am Jur, Negligence § 96 *et seq.*

Case by Ruby Nash against Arthur Lewis and Emma Lewis, doing business as Lewis Inn, for injuries received in fall on premises. Judgment for defendants *non obstante veredicto.* Plaintiff appeals. Affirmed.

*Demel & Silitch,* for plaintiff.

*Ward, Plunkett & Cooney,* for defendants.

EDWARDS, J. Plaintiff received serious fractures of her left leg as she was leaving the premises of defendants' tavern on June 26, 1955, at approximately 9 p.m. Claiming that her injuries resulted from defendants' negligence, the nature of which will be more fully described later, plaintiff sued and received a jury verdict in the sum of $8,323.70. Motions for a directed verdict having been reserved by the court under the Empson act,[*] defendants subsequently moved for judgment notwithstanding the verdict and the circuit judge granted this motion. Plaintiff now appeals to this Court, claiming error in the granting of said motion.

In such a situation we view the facts in the light most favorable to the plaintiff since this apparently was the view of them taken by the jury. *White* v. *Herpolsheimer Co.,* 327 Mich 462 (26 ALR2d 667); *Goldsmith* v. *Cody,* 351 Mich 380. We do not think we can improve in this regard upon plaintiff-appellant's own version thereof contained in her brief, and for purposes of this decision we accept the following as the statement of facts to which we devote our attention:

"The facts most favorable to plaintiff's case indicate that as she was leaving defendants' tavern, approaching the open front door:

---

[*] CL 1948, § 691.691 *et seq.* (Stat Ann § 27.1461 *et seq.*).

"1. She observed the mat on the landing outside the door, and it looked perfectly safe.

"2. She proceeded to step down upon the mat.

"3. The mat slipped under her foot, causing her to fall and injure herself.

"The facts, viewed in the same light, further show:

"1. That the mat did not cover the entire landing, nor was it fastened in any way to the landing.

"2. That there was sand, debris, stones and pebbles on the landing in and about the mat, which were discovered by the plaintiff after she had fallen and was sitting on the mat and landing for some time prior to the arrival of the ambulance.

"3. That the landing upon which the mat rested was surrounded with a large parking area covered with sand, stones, pebbles and crushed slag.

"4. That the stones and pebbles, et cetera, found on the landing and embedded in the mat (some of which were still embedded in the mat at the time of the trial) came from the parking area.

"5. That defendants were fully aware of the fact that the stones, et cetera, in the parking area were tracked onto the landing by patrons walking from the parking area into the tavern.

"6. That the defendant Mrs. Lewis testified that they had a full-time janitor who swept the landing every morning, 7 days a week, and removed and cleaned under the mat.

"Whereas the janitor in question, Mr. Allen B. Newman, testified that in June of 1955, the time of the accident, he worked for the defendants at the tavern on week ends only.

"7. Also, the defendant Mrs. Lewis testified that she did not actually examine the mat in question when she visited the premises around noon of the day in question, and defendants' witness, Mr. Newman, could only state that the slab was swept by him as a routine job each morning.

"8. That assuming the mat and landing were swept in the morning, nothing further was ever done

about said pebbles, et cetera, which accumulated on the landing and mat throughout the day and evening."

As to the crucial matters with which we will be concerned, we quote the following from plaintiff's testimony which is apparently the basis for the statement above pertaining to "sand, debris, stones and pebbles on the landing in and about the mat":

"*Q.* As you were down on the mat there, on the landing, did you observe that area?
"*A.* It was dirty.
"*Q.* Dirty, what do you mean?
"*A.* Grit and little pebbles.
"*Q.* Were they on the landing?
"*A.* They were on the landing.
"*Q.* Were there any pebbles or grit in and about the mat?
"*A.* Yes."

It should be noted, also, that June 26, 1955, was a Sunday when the testimony shows the janitor to have been on duty.

The declaration in plaintiff's cause does not contend that there was anything inherently dangerous in the rubber mat at the entranceway beyond the fact that there were "sand" and "pebbles" underneath said mat and the fact that the mat was not fastened down.

The mat which was an exhibit at trial and before this Court is an ordinary doormat of common usage. In size, the mat is 17 inches wide by 25–1/2 inches long. It is made of strips which appear to have been cut from rubber tires, approximately 5/8 inch in height and 3/8 inch in thickness. These rubber and fabric strips are so arranged as to leave open spaces which approximate triangles with a 1/2 inch base and 1–1/4 inch height. The mat is heavy and obviously designed for maximum friction on any surface on which it is placed. In granting the mo-

tion for judgment *non obstante veredicto,* the trial judge said as follows:

"Viewing the proof submitted by the plaintiff in the light most favorable to her, the court is of the opinion that the defendants' motion should be granted.

"The plaintiff has not made and did not make a case for the jury. Whether the case is decided on the basis of the proof submitted by the plaintiff or on the basis of all of the proof submitted, the conclusion reached must be the same. Plaintiff did not prove negligence. Even if it could be said that a dangerous condition existed at the time the plaintiff stepped upon the mat, there was no showing that the 'dangerous condition' was brought to the attention of the defendants or existed a sufficient length of time and under circumstances so that such condition should have been discovered and known to the defendants."

2 Restatement of the Law of Torts, Negligence, under title of "business visitors," § 343, sets forth the following standard of care which we believe is applicable here:

"A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he (a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them."

We do not find from the testimony which we have set forth, taking the facts in the interpretation most favorable to the plaintiff, that they establish proof of any unreasonable risk. The existence of a parking lot covered by slag and gravel, the existence of the concrete porch entrance to a restaurant or public house and the placing thereon of a mat of the nature of that which we have described are among

the commonplaces of our day and time. Nor do we believe the situation is altered if we add the facts earnestly argued by appellant that after injury she saw some "grit and little pebbles" on the landing.

We are not persuaded that this additional fact represents an unsafe condition, the failure to remedy which would be negligence on the part of the defendant. And if, for the sake of argument, it were conceded to be such, there is, as the trial judge pointed out, no proof as to how long the condition had existed, or that defendant had either actual or constructive knowledge thereof.

This Court has had occasion recently to deal with the legal principles involved in tort actions by business invitees. *Konen* v. *Moose Lodge No. 288,* 345 Mich 80; *Jones* v. *Michigan Racing Association,* 346 Mich 648; *Bisceglia* v. *Cunningham Drug Stores,* 350 Mich 159; *Goldsmith* v. *Cody, supra.*

In this case, as in *Bisceglia, supra,* 163, "plaintiff at best proved occurrence of an unfortunate accident absent negligence as charged against the defendant."

We distinguish this case on its facts from *White* v. *Herpolsheimer Co., supra; Dalgleish* v. *Oppenheim, Collins & Co.,* 302 Pa 88 (152 A 759) ; and *Murphy* v. *Fidelity National Bank & Trust Co.,* 226 Mo App 1181 (49 SW2d 668), relied upon by appellant. In the first of these cases, a child's heavy swing protruded into a department store aisle. And in each of the other 2, there was evidence from which the court found that there were conditions known to the defendant which made the rubber mat and the floor in question slippery.

Affirmed. Costs to appellees.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, VOELKER, and KAVANAGH, JJ., concurred.