**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

FILED JULY 3, 2001

ODIS LUGO,

    Plaintiff-Appellee,

v                                            No. 112575

AMERITECH CORPORATION, INC.,

    Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

TAYLOR, J.

This premises liability action arises from a fall in a parking lot possessed by defendant. Plaintiff apparently fell after stepping in a pothole in the parking lot. The circuit court granted summary disposition in favor of defendant, but the Court of Appeals reversed, rejecting defendant's position that plaintiff's claim was barred by the "open and obvious

danger" doctrine. We reverse the judgment of the Court of Appeals and reinstate the judgment of the circuit court. The pothole was open and obvious, and plaintiff has not provided evidence of special aspects of the condition to justify imposing liability on defendant despite the open and obvious nature of the danger.

I

Plaintiff was walking through a parking lot toward defendant's building to pay a telephone bill when she apparently stepped in a pothole and fell. Plaintiff testified at her deposition that she was not watching the ground and that she was concentrating on a truck in the parking lot at the time. However, she also testified that nothing would have prevented her from seeing the pothole.

Defendant moved for summary disposition, claiming that the pothole constituted an open and obvious danger from which it had no duty to protect plaintiff.[1] The circuit court granted the motion, stating:

> I am going to take the position that there is no material question of fact. I think it is quite clear that the lady was walking along without paying proper attention to the circumstances where she was walking, and there is a legal duty to look

[1]The motion for summary disposition was filed under both MCR 2.116(C)(8) and (C)(10). While not expressly stated, it is clear that the trial court granted the motion under subsection (C)(10) because the trial court's discussion involved evidence beyond the pleadings.

2

where you are walking. I can't be anymore precise than that.

The Court of Appeals reversed the grant of summary disposition in a two-to-one decision. The Court of Appeals majority concluded that the circuit court erred in holding that plaintiff's legal duty to look where she was walking barred her claim. The Court stated that, under principles of comparative negligence, a plaintiff's negligence can only reduce the amount of recovery, not eliminate altogether a defendant's liability. The Court also determined that the open and obvious danger rule did not apply because there was a genuine issue of material fact regarding whether defendant should have expected that a pedestrian might be distracted by the need to avoid a moving vehicle, or might even reasonably step into the pothole to avoid such a vehicle.

We disagree with the holding of the Court of Appeals. Further, while we do not embrace the reasoning of the circuit court, we agree with its result.

## II

The proper focus in this case is the extent of the open and obvious doctrine in premises liability cases. In general, a premises possessor owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land. *Bertrand v Alan Ford, Inc,* 449 Mich 606, 609; 537 NW2d 185

(1995).  However, this duty does not generally encompass removal of open and obvious dangers:

> [W]here the dangers are known to the invitee or are so obvious that the invitee might reasonably be expected to discover them, an invitor owes no duty to protect or warn the invitee unless he should anticipate the harm despite knowledge of it on behalf of the invitee.  [*Riddle v McLouth Steel Products Corp,* 440 Mich 85, 96; 485 NW2d 676 (1992).]

Accordingly, the open and obvious doctrine should not be viewed as some type of "exception" to the duty generally owed invitees, but rather as an integral part of the definition of that duty.  This Court further elaborated in *Bertrand, supra* at 611:

> When §§ 343 and 343A [of the Restatement Torts, 2d] are read together, the rule generated is that if the particular activity or condition creates a risk of harm *only* because the invitee does not discover the condition or realize its danger, then the open and obvious doctrine will cut off liability if the invitee should have discovered the condition and realized its danger.  On the other hand, if the risk of harm remains unreasonable, despite its obviousness or despite knowledge of it by the invitee, then the circumstances may be such that the invitor is required to undertake reasonable precautions.

In sum, the general rule is that a premises possessor is not required to protect an invitee from open and obvious dangers, but, if special aspects of a condition make even an open and obvious risk unreasonably dangerous, the premises possessor has a duty to undertake reasonable precautions to protect invitees from that risk.

4

The following language from *Bertrand* provides a more concrete discussion of these abstract concepts:

> With the axiom being that the duty is to protect invitees from *unreasonable* risks of harm, the underlying principle is that even though invitors have a duty to exercise reasonable care in protecting their invitees, they are not absolute insurers of the safety of their invitees. *Quinlivan* [*v The Great Atlantic & Pacific Tea Co, Inc,* 395 Mich 244, 261; 235 NW2d 732 (1975).] Consequently, because the danger of tripping and falling on a step is generally open and obvious, the failure to warn theory cannot establish liability. However, there may be *special aspects* of these particular steps that make the risk of harm unreasonable, and, accordingly, a failure to remedy the dangerous condition may be found to have breached the duty to keep the premises reasonably safe. [*Bertrand, supra* at 614.]

Consistent with *Bertrand,* we conclude that, with regard to open and obvious dangers, the critical question is whether there is evidence that creates a genuine issue of material fact regarding whether there are truly "special aspects" of the open and obvious condition that differentiate the risk from typical open and obvious risks so as to create an unreasonable risk of harm, i.e., whether the "special aspect" of the condition should prevail in imposing liability upon the defendant or the openness and obviousness of the condition should prevail in barring liability.

An illustration of such a situation might involve, for example, a commercial building with only one exit for the general public where the floor is covered with standing water.

While the condition is open and obvious, a customer wishing to exit the store must leave the store through the water. In other words, the open and obvious condition is effectively unavoidable. Similarly, an open and obvious condition might be unreasonably dangerous because of special aspects that impose an unreasonably high risk of severe harm. To use another example, consider an unguarded thirty foot deep pit in the middle of a parking lot. The condition might well be open and obvious, and one would likely be capable of avoiding the danger. Nevertheless, this situation would present such a substantial risk of death or severe injury to one who fell in the pit that it would be unreasonably dangerous to maintain the condition, at least absent reasonable warnings or other remedial measures being taken.[2] In sum, only those special

_____

[2] In considering whether a condition presents such a uniquely dangerous potential for severe harm as to constitute a "special aspect" and to avoid barring liability in the ordinary manner of an open and obvious danger, it is important to maintain the proper perspective, which is to consider the risk posed by the condition *a priori,* that is, before the incident involved in a particular case. It would, for example, be inappropriate to conclude in a retrospective fashion that merely because a particular plaintiff, in fact, suffered harm or even severe harm, that the condition at issue in a case posed a uniquely high risk of severe harm. This is because a plaintiff may suffer a more or less severe injury because of idiosyncratic reasons, such as having a particular susceptibility to injury or engaging in unforeseeable conduct, that are immaterial to whether an open and obvious danger is nevertheless unreasonably dangerous. Thus, contrary to the possible implication of Justice Weaver's concurrence, this opinion does not allow the imposition of liability merely
(continued...)

6

[2](...continued)
because a particular open and obvious condition has some potential for severe harm. Obviously, the mere ability to imagine that a condition could result in severe harm under highly unlikely circumstances does not mean that such harm is reasonably foreseeable. However, we believe that it would be unreasonable for us to fail to recognize that unusual open and obvious conditions could exist that are unreasonably dangerous because they present an extremely high risk of severe harm to an invitee who fails to avoid the risk in circumstances where there is no sensible reason for such an inordinate risk of severe harm to be presented.

We consider it unnecessary to express a view as to how *Singerman v Municipal Service Bureau, Inc,* 455 Mich 135; 565 NW2d 383 (1997), should have been decided. Nevertheless, we do not perceive why Justice Weaver concludes that this opinion would seem to require that "the question whether the risk of harm caused by the lighting defect [in *Singerman*] was unreasonable despite its obviousness would be for the jury." *Post* at 3-4. We express no view on that question. Further, as reflected in the result of the present case, this opinion does not preclude a grant of summary disposition in favor of a defendant in a premises liability action where no reasonable person could conclude that the open and obvious condition at issue involved special aspects that presented an unreasonable risk to invitees.

Finally, to get to the heart of this, what concerns us about Justice Weaver's position is that it might be taken to mean no matter what the open and obvious peril, even a thirty-foot-deep unguarded or unmarked pothole, if it was open and obvious, no tort claim would lie. While we imagine that Justice Weaver would deny that such a result would follow from her position, she seems to reject the idea "that the *degree* of potential harm is relevant to whether the risk of harm posed by a condition remains unreasonable despite its obviousness." *Post* at 2. Yet, it appears obvious to us that the degree of potential harm from an open and obvious condition may, in some unusual circumstances, be the key factor that makes such a condition unreasonably dangerous. To consider our admittedly extreme example, while it is reasonable to expect invitees to avoid common potholes, that does not mean it is reasonable to leave a gaping hole in a parking lot even though the difference in the degree of harm likely to follow from an

(continued...)

aspects that give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided will serve to remove that condition from the open and obvious danger doctrine.[3]

However, typical open and obvious dangers (such as ordinary potholes in a parking lot) do not give rise to these special aspects.[4] Using a common pothole as an example, the condition is open and obvious and, thus, cannot form the basis of liability against a premises possessor. The condition does not involve an especially high likelihood of injury. Indeed, an "ordinarily prudent" person, *Bertrand, supra* at 615, would typically be able to see the pothole and avoid it. Further, there is little risk of severe harm. Unlike falling an extended distance, it cannot be expected that a typical person tripping on a pothole and falling to the ground would suffer

---

[2](...continued)
invitee's failure to avoid the hazard is the only material difference between the two situations.

[3] Contrary to the indication of Justice Weaver's concurrence, *post* at 1, our conclusion regarding the special aspects of an open and obvious condition that are required in order to remove such a condition from the scope of the open and obvious doctrine is not mere "dicta." On the contrary, the lack of such special aspects in the present case forms the basis of our holding that defendant was entitled to a grant of summary disposition in its favor.

[4] Indeed, the result that we reach in the present case underscores that vitality of the open and obvious doctrine as a bar to liability in cases involving typical open and obvious conditions such as the common pothole at issue in this case.

severe injury.

III

Applying these general principles to the case at hand, we conclude that defendant was entitled to summary disposition under MCR 2.116(C)(10), which provides for summary disposition when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." Further, the party opposing a motion for summary disposition (in this case plaintiff) is required by MCR 2.116(G)(4) to "set forth specific facts showing that there is a genuine issue for trial" with regard to the issues raised in the summary disposition motion. In this case, the disputed issue was whether plaintiff's claim was barred by the open and obvious danger doctrine.

The evidence submitted to the trial court allows for no genuine issue of material fact with respect to whether plaintiff's claim was barred by the open and obvious danger doctrine. This case simply involved a common pothole in a parking lot. While plaintiff argues that the pothole was filled with debris, the evidence presented to the trial court simply does not allow a reasonable inference that the pothole was obscured by debris at the time of plaintiff's fall.

9

Indeed, plaintiff's testimony at her deposition was that she did not see the pothole because she "wasn't looking down," not because of any debris obscuring the pothole.

The present case is substantially similar to *Maurer v Oakland Co Parks & Recreation Dep't,* one of the two consolidated cases decided by this Court in *Bertrand.* In *Maurer,* the plaintiff slipped and fell on an "unmarked cement step" as she was leaving a rest room area at a park. The plaintiff alleged that the defendant was negligent for not marking the step with a contrasting color or warning of the existence of the step. *Bertrand, supra,* at 618. Similar to plaintiff in the present case tripping over the pothole because she did not see it, the plaintiff in *Maurer* testified at her deposition that she "just didn't see the step there." *Id.* at 619.

The *Bertrand* Court held that the defendant in *Maurer* was entitled to summary disposition on the basis of the open and obvious danger doctrine because the plaintiff had shown nothing unusual about the step:

> The plaintiff's only asserted basis for finding that the step was dangerous was that she did not see it. We hold that the plaintiff has failed to establish anything unusual about the step . . . . Because the plaintiff has not presented any facts that the step posed an *unreasonable* risk of harm, the trial court properly granted summary disposition. [*Id.* at 621 (emphasis in the original).]

10

In sum, the plaintiff in *Maurer* could not avoid summary disposition because the evidence showed only that she tripped and fell on a common step that she failed to notice.[5] Likewise, the evidence in the present case reflects that plaintiff tripped and fell on a common pothole because she failed to notice it. While plaintiff argues that moving vehicles in the parking lot were a distraction, there is certainly nothing "unusual" about vehicles being driven in a parking lot, and, accordingly, this is not a factor that removes this case from the open and obvious danger doctrine.

In *Bertrand,* this Court stated:

> [B]ecause steps are the type of everyday occurrence that people encounter, under most circumstances, a reasonably prudent person will look where he is going, will observe the steps, and will take appropriate care for his own safety. Under ordinary circumstances, the overriding public policy of encouraging people to take reasonable care for their own safety precludes imposing a duty on the possessor of land to make ordinary steps "foolproof." Therefore, the risk of harm is not unreasonable. [*Id*. at 616-617.]

Likewise, potholes in pavement are an "everyday occurrence" that ordinarily should be observed by a reasonably prudent

---

[5] This should not be understood as meaning that the claim of the plaintiff in *Maurer* was barred because she did not use appropriate care for her own safety. The level of care used by a particular plaintiff is irrelevant to whether the condition created or allowed to continue by a premises possessor is unreasonably dangerous. Rather, the important point is that the plaintiff in *Maurer* offered nothing to distinguish the steps at issue from ordinary steps in terms of the danger that they presented.

person.  Accordingly, in light of plaintiff's failure to show special aspects of the pothole at issue, it did not pose an unreasonable risk to her.

While we agree with the result reached by the trial court, we consider it important to disapprove part of its apparent rationale.  The trial court's remarks indicate that it may have granted summary disposition in favor of defendant because the plaintiff "was walking along without paying proper attention to the circumstances where she was walking." However, in resolving an issue regarding the open and obvious doctrine, the question is whether the *condition of the premises* at issue was open and obvious and, if so, whether there were special aspects of the situation that nevertheless made it unreasonably dangerous.  In a situation where a plaintiff was injured as a result of a risk that was truly outside the open and obvious doctrine and that posed an unreasonable risk of harm, the fact that the plaintiff was also negligent would not bar a cause of action.  This is because Michigan follows the rule of comparative negligence. Under comparative negligence, where both the plaintiff and the defendant are culpable of negligence with regard to the plaintiff's injury, this reduces the amount of damages the plaintiff may recover but does not preclude recovery altogether.  See, e.g., *Riddle, supra* at 98 (under comparative

12

negligence, "a defendant may present evidence of a plaintiff's negligence in order to reduce liability").

Accordingly, it is important for courts in deciding summary disposition motions by premises possessors in "open and obvious" cases to focus on the objective nature of the condition of the premises at issue, not on the subjective degree of care used by the plaintiff. In the present case, there was no evidence of special aspects that made the open and obvious pothole unreasonably dangerous.

IV

There is much agreement between our opinion and the concurrence authored by Justice Cavanagh. We agree "that a premises possessor is not generally required to protect an invitee from open and obvious dangers." *Post* at 2. We also agree that, consistent with the 2 Restatement Torts, 2d, §§ 343 and 343A, circumstances may arise in which an open and obvious condition is nevertheless unreasonably dangerous so as to give rise to a duty upon a premises possessor to in some manner remove or otherwise appropriately protect invitees against the danger. We further agree that any comparative negligence by an invitee is irrelevant to whether a premises possessor has breached its duty to that invitee in connection with an open and obvious danger because an invitee's comparative negligence can only serve to reduce, not

13

eliminate, the extent of liability.

As we understand it, Justice Cavanagh's basic position is that the inquiry into whether an open and obvious condition is unreasonably dangerous should not be focused on whether that condition involves special aspects that distinguish it from ordinary open and obvious conditions. We disagree because we believe that this "special aspects" inquiry serves to concretely focus trial courts on the showing that must be made in evaluating motions for summary disposition in this context. In our view, this approach is consistent with § 343A of the Restatement, which indicates that a possessor of land is only liable to invitees for harm caused by an obvious condition if the possessor should "anticipate the harm." *Post* at 5. Simply put, there must be something out of the ordinary, in other words, special, about a particular open and obvious danger in order for a premises possessor to be expected to anticipate harm from that condition. Indeed, it seems obvious to us that if an open and obvious condition lacks some type of special aspect regarding the likelihood or severity of harm that it presents, it is not unreasonably dangerous. We cannot imagine an open and obvious condition that is unreasonably dangerous, but lacks special aspects making it so.[6]

_____

[6] Justice Cavanagh states that "[a] more correct statement of the law [in *Bertrand, supra*] would have been to
(continued...)

14

Justice Cavanagh agrees with our conclusion that plaintiff has failed to establish that the pothole in the present case "presented an unreasonable risk of harm." *Post* at 21. In this opinion, we explain concretely *why* that is so. It is because the evidence proffered by plaintiff establishes nothing more than the existence of a common, ordinary pothole. Because of the great variety of circumstances in which premises liability claims may be raised, it may be practically impossible to demarcate the extent of a premises possessor's duties with great precision. Nevertheless, we believe that our approach, focusing on the existence or absence of special aspects of an open and obvious danger, will guide the trial courts in considering whether particular open and obvious conditions posed an unreasonable risk of harm better than would be the case without this further exposition of the open and obvious doctrine.

Finally, in response to Justice Weaver's concurrence, this opinion does not require a premises owner or possessor to be an "insurer of the safety of invitees." *Post* at 5. Indeed, our resolution of the present case in favor of

---

[6](...continued)
say that the duty to exercise reasonable care is not breached in cases involving ordinary steps." *Post* at 18. We agree that ordinary steps cannot be considered to present an unreasonably dangerous risk of harm. This is consistent with our focus on the existence or absence of special aspects of an open and obvious condition.

defendant would belie any such a claim. However, a premises possessor does have a duty to undertake reasonable efforts to make its premises reasonably safe for its invitees. This opinion attempts to provide a further explanation of the scope of that duty.

For the above reasons, we reverse the judgment of the Court of Appeals and reinstate the judgment of the circuit court.

CORRIGAN, C.J., and YOUNG and MARKMAN, JJ., concurred with TAYLOR, J.

16

ODIS LUGO,

    Plaintiff-Appellee,

v                                            No. 112575

AMERITECH CORPORATION, INC.,

    Defendant-Appellant.

_____

CAVANAGH, J. (*concurring*).

This premises liability suit arises out of the plaintiff's claim that she fell and injured herself after stepping into a pothole in the defendant's parking lot. The circuit court granted defendant summary disposition, and the Court of Appeals reversed. The majority now reverses the Court of Appeals, and holds that (1) the pothole was open and obvious, and (2) there is no justification for imposing liability on the defendant despite the open and obvious nature of the danger presented by the pothole because the plaintiff failed to provide evidence that the pothole had "special aspects."

I join the majority's decision to reverse the Court of Appeals and reinstate the judgment of the circuit court because I agree that the plaintiff failed to establish a basis for imposing liability despite the open and obvious nature of the pothole. I also join the majority's statement that the trial court erred in focusing on the plaintiff's subjective degree of fault. However, I write separately to express my disagreement with the majority's "special aspects" analysis. I would instead prefer to work with the premises liability law already offered by this Court and to adopt an approach more true to the Restatement.

## I. The Majority Approach

The majority offers an approach to open and obvious danger cases that focuses on the special aspects of a condition:

> In sum, the general rule is that a premises possessor is not required to protect an invitee from open and obvious dangers, but, if special aspects of a condition make even an open and obvious risk unreasonably dangerous, the premises possessor has a duty to undertake reasonable precautions to protect invitees from that risk. [Slip op at 5.]

I agree with the majority that a premises possessor is not generally required to protect an invitee from open and obvious dangers. Also, I agree with the majority that there are exceptions to the general rule. However, I disagree with the majority that the issue can be simply summarized in terms of

2

whether "special aspects" of a condition make the risk of harm unreasonably dangerous. Instead, the Court must make two inquiries: (1) whether the possessor may be held liable pursuant to the terms of 2 Restatement Torts, 2d, § 343, and (2) whether liability is suspended under § 343A. In order to determine whether liability should be imposed, a thorough consideration of the historical underpinnings of the open and obvious danger doctrine is in order. I offer such an analysis in this opinion, with the hope that the majority opinion will not be read as limiting the scope of the doctrine.

## II. The Open and Obvious Danger Doctrine and the Restatement Approach

Recovery has been barred in premises liability cases involving open and obvious dangers for at least a century. See, e.g., *Caniff v Blanchard Navigation Co*, 66 Mich 638; 33 NW 744 (1887). The Restatement approach has been key to Michigan's open and obvious danger law for almost as long. The first explicit reference incorporating the Restatement approach is *Goodman v Theatre Parking, Inc*, 286 Mich 80; 281 NW 545 (1938), where the plaintiff sought damages for a sprained ankle sustained after stepping on a cinder in the defendant's parking lot.[1] Since that time, the Restatement

---

[1] At the time, 2 Restatement Torts, Negligence, under title of business visitors, § 343, set forth the following standard of care:

(continued...)

3

has been cited repeatedly, even after its text was changed. See *Quinliven v Great Atlantic & Pacific Tea Co, Inc*, 395 Mich 244; 235 NW2d 732 (1975)(quoting the Restatement with approval). It is safe to say that the current version of Restatement §§ 343 and 343A form the basis for Michigan's open and obvious decisional law.[2]

### A. What the Restatement says

The applicable sections of the Restatement provide as follows:

> § 343. DANGEROUS CONDITIONS KNOWN TO OR DISCOVERABLE BY POSSESSOR
>
> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to

---

[1](...continued)
A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he (a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them. [*Goodman* at 82.]

[2] Section 343A was added to the Restatement after § 343, but the two sections are to be read together, as is indicated by comment (a) to § 343.

protect them against the danger.

### § 343A. KNOWN OR OBVIOUS DANGERS

(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

(2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land, or of the facilities of a public utility, is a factor of importance indicating that the harm should be anticipated.

I read § 343 as providing a standard of care to be applied in cases where there exists a dangerous condition on the premises that the possessor knows about or could reasonably discover.[3] If the possessor is charged with knowledge of the condition or the court finds that he could reasonably discover the condition, he can be liable if (1) he fails to exercise reasonable care to protect his invitees even though the possessor should realize that the condition poses an unreasonable risk of harm to an invitee, and (2) he should realize that an invitee will either fail to discover the condition, or fail to appreciate the danger of the condition if it is discovered, or fail to protect himself from the danger even if discovered or realized.

---

[3] As will be explained, however, the Court has not provided a uniform interpretation of the Restatement, and there has been some debate about whether the Restatement discusses duty or standard of care.

More instructive is the text of comment (a) to § 343, which provides that "This section should be read together with § 343A, which deals with the effect of the fact that the condition is known to the invitee, or is obvious to him . . . . In the interest of brevity the limitation is not repeated in this section." Comment (a) is helpful in two ways: it illustrates that hidden or unknown conditions can be distinguished from known or obvious conditions and that § 343A is a rule designed to limit liability, whereas § 343 is designed to allow for the imposition of liability.

It is important to realize that the comments to § 343A begin by saying, "The rule stated in this subsection applies to all persons who enter or remain on land in the capacity of invitees, as defined by § 332." (Emphasis added.) Thus, though §§ 343 and 343A must be read together, I believe that § 343A needs to be read as its own rule, and not as an exception to § 343. The general rule provided by § 343A is that a possessor of land is not liable to his invitees for injuries caused by activities or conditions on the land whose danger is known or obvious. The second clause of subsection (1) of § 343A provides the exception to this rule: if the possessor of land should anticipate the harm to the invitee despite the invitee's knowledge or the condition's obviousness, the possessor will not be relieved of liability under the general open and obvious rule.

## B. Where does the Restatement come into play?

The second imperative point to understand about Restatement §§ 343 and 343A is that they refer to the imposition of liability; they do not discuss whether a duty exists. In fact, one of the very first cases incorporating the Restatement into our jurisprudence stated, "2 Restatement of the Law of Torts, Negligence, under title of 'business visitors,' § 343, sets forth the following standard of care which we believe is applicable here . . . ." *Nash v Lewis*, 352 Mich 488, 492; 90 NW2d 480 (1958). In my view, § 343 and § 343A assume that a duty has been imposed by virtue of the possessor and invitee relationship, but that liability nonetheless can be limited under certain circumstances.

Unfortunately, the Restatement does not explicitly lay out the standard of care, it simply says that a possessor of land "is subject to liability" in § 343 cases, or "is not liable" in § 343A cases. Thus, the Restatement only explicitly provides a liability shield. However, the Restatement's use of phrases such as "should expect," "unreasonable risk," and "reasonable care" indicate that a premises possessor must protect his invitees "from an unreasonable risk of harm caused by a dangerous condition of the land that the landowner knows or should know the invitees will not discover, realize, or protect themselves against." *Bertrand v Alan Ford, Inc*, 449 Mich 606, 609; 537 NW2d 185

7

(1995).

Once this premises liability rule is plugged into the language of the Restatement, we would be left with the following rule in known or obvious danger cases: A possessor owes his invitees a duty of reasonable care in order to protect them from an unreasonable risk of harm caused by a dangerous condition on the land; he breaches that duty by failing to protect his invitees from harm, though he should have anticipated that harm would result from the known or obvious danger despite the condition's obviousness or the invitee's knowledge of the danger. When the invitor breaches his duty of care in this manner, he can be subject to liability for physical harm caused to his invitees by a condition on the land if the conditions of § 343 are met.

A second inquiry would then be whether, despite the possibility that liability could normally be imposed against the possessor because he has failed to reasonably protect his invitee, the possessor can nonetheless avoid liability on the basis that the danger was known or obvious to the invitee. When the danger is obvious, or when the invitee knows of it, § 343A of the Restatement would suspend liability unless the possessor should anticipate harm flowing from the condition despite the invitee's knowledge of the condition or the obviousness of the condition.

## C. How the cases confuse the issue, and what contributory negligence has to do with it

Unfortunately, the Restatement approach can be somewhat difficult to apply because it bears some similarity to the contributory negligence doctrine. I believe that these similarities have caused Michigan's case law on the open and obvious doctrine to be somewhat imprecise.

The potential for confusion stems from the fact that, in both contributory negligence and in open and obvious cases, liability can be suspended because of action (or inaction) on the part of the plaintiff. In both instances, a particular defendant may be absolved of liability for negligence even though he owes a duty to the plaintiff. Despite that similarity, though, there is a distinct difference between the open and obvious rule and the rule of contributory negligence. In contributory negligence cases, a defendant is absolved of liability even where he acts completely negligently. Contributory negligence, a defensive mechanism, is based on the policy that damages are not recoverable where the plaintiff and the defendant are both partially at fault. The open and obvious danger doctrine, on the other hand, relies on the standard of care. Where the defendant fails to protect his invitees from an unreasonable risk of harm posed by a foreseeable danger, he will be liable. If the defendant is absolved from liability under the open and obvious doctrine,

the reason for the absolution is not that the plaintiff acted negligently. Instead, the reason is that the open and obvious danger of the condition is a "circumstance" under the standard of care. The possessor will be deemed to have acted reasonably under those circumstances.

The idea that defendants should prevail where the plaintiff fails to heed an open and obvious danger has been around for a while, but, unfortunately, the focus on the standard of care has been lost in some instances. The reason is partially that the open and obvious doctrine predates Michigan's shift from contributory negligence to comparative negligence. In the era of contributory negligence, failure to precisely separate concepts of duty, liability, and standard of care bore little consequence because plaintiffs could lose simply by virtue of their own negligence. As Justice Levin pointed out in dissent in *Riddle v McLouth Steel Products*, 440 Mich 85; 485 NW2d 676 (1992), these contributory negligence cases sometimes expressed their holdings in terms of a "no-duty" rule: that a possessor owes no duty to protect his invitees from open and obvious dangers.

For example, in *Caniff,* the plaintiff sought to recover damages for an injury sustained when he fell through a hatchway left open on the deck of a ship. The Court denied recovery. The primary reasons for the denial were that (1) the plaintiff was an experienced sailor who was familiar with

ships and who knew that hatchways were often left open while the ship was at port and, therefore, had reason to expect that the hatchway he fell into would have been left open, (2) that the plaintiff failed to exercise due care when he walked carelessly forward in the dark, (3) that the plaintiff's actions constituted inexcusable negligence, and (4) that the general premises liability rule would not apply in cases where the plaintiff knows or should know that danger exists because it is upon the plaintiff to avoid the peril. In other words, reduced to its simplest terms, *Caniff* held that the plaintiff should have known better and should have looked where he was going.

In *Garrett v WS Butterfield Theatres, Inc*, 261 Mich 262; 246 NW 57 (1933), the plaintiff was injured while entering a restroom. The entryway required patrons to step down into the restroom. Plaintiff failed to see the step, and fell upon entry. The Court stated that "[d]ifferent floor levels in private and public buildings, connected by steps, are so common that the possibility of their presence is anticipated by prudent persons. The construction is not negligent unless, by its character, location, or surrounding circumstances, a reasonably prudent person would not be likely to expect a step or see it." *Id*. at 263-264. The Court denied recovery, stating that the defendant was not guilty of negligence because it owed no duty to "prevent careless persons from

11

hurting themselves."  *Id.* at 264.

Although these two early cases cited by the parties addressed the liability issue by stating that no duty was owed by the defendant to the plaintiff, it seems to me that the reason for the holding in both cases was that the plaintiff should have expected and heeded the danger.  I posit that contributory negligence principles actually would require a two-step inquiry: (1) would the premises owner normally owe a duty to the plaintiff to keep the premises reasonably safe, and (2) would the premises owner be relieved of liability because of the affirmative defense of contributory negligence?

In these cases, in order to bar recovery on the basis of the plaintiff's actions, the Court would have had to conclude either that there was no duty to keep the premises reasonably safe, that the premises were reasonably safe, or that the duty to keep the premises reasonably safe was offset by the plaintiff's duty to care for his own safety.  If the court were to find that no duty existed, there would be no prima facie case of negligence.  Were the court to find that the premises were reasonably safe, there would be no breach of the standard of care.  If it were the plaintiff's own failure to protect himself that barred liability despite an unreasonable risk, liability would have been suspended under the contributory negligence doctrine.

12

Two later cases seemed to recognize that there is a difference between the duty owed and the effect of contributory negligence on that duty. In *Ackerberg v Muskegon Osteopathic Hosp*, 366 Mich 596; 115 NW2d 290 (1962), the plaintiff sued the defendant for injuries sustained when he fell from a platform located outside a hospital entrance. The trial court denied recovery on two grounds. First, it held that the plaintiff failed to show a duty or its breach. Second, it held that the plaintiff failed to exercise reasonable care for his own safety and that the claim was barred because of the plaintiff's contributory negligence. The language used by the *Ackerberg* trial court seemed to be in line with *Caniff* and *Garrett*. However, this Court reversed, stating that jury questions existed regarding both whether the defendant hospital had a duty to construct a guardrail and whether the plaintiff was guilty of contributory negligence.

Another relevant case is *Quinliven*, in which the plaintiff slipped and fell on some ice in the defendant's parking lot. This Court held that the defendant owed a duty to the plaintiff to use reasonable care to protect against the hazards arising from the accumulation of ice and snow. The case emphasized that business invitors owe invitees a duty to "be reasonably sure that [the invitor] is not inviting [the invitee] into danger, and to that end, he must exercise ordinary care and prudence to render the premises reasonably

13

safe for the visit." *Quinliven* at 251 (quoting *Blakely v White Star Line*, 154 Mich 635, 637; 118 NW 482 (1908)). *Quinliven* overruled prior case law that said no duty was owed in cases involving the natural accumulation of ice and snow. Yet, the Court also noted that the plaintiff's actions could be considered in the context of contributory negligence. In my view, *Quinliven* correctly determined the defendant's duty by referencing the relationship between the parties as well as the danger presented, and then viewed the plaintiff's negligence as affecting liability rather than alleviating the duty owed.

In *Placek v Sterling Heights*, 405 Mich 638; 275 NW2d 511 (1979), this Court made the move from contributory to comparative negligence. If a plaintiff's negligence is considered in terms of liability rather than in terms of duty, the move would not necessarily have a huge effect on the scheme of analysis applied in premises liability cases, though it would have an effect on the plaintiff's ability to recover. For example, if the *Caniff* case were analyzed under a *Quinlaven* approach, the defendant ship owner could have prevailed on one of two theories: (1) the ship was reasonably safe, and ordinary care was exercised despite the fact that the hatch was left open, or (2) it was unreasonable to leave the hatch open, but the plaintiff nonetheless would lose because his own failure to exercise due care for his own

14

safety contributed to his injury and barred recovery. Under comparative negligence principles, the defendant could still prevail if the ship was deemed reasonably safe despite the open hatch, but the ship owner would not necessarily prevail in the second instance. As such, there is a significant difference between an interpretation of the open and obvious doctrine that says, "a defendant owes a duty to invitees to keep his premises reasonably safe, but that duty does not extend to protection against open and obvious dangers," and to say that, "a defendant owes a duty to keep his premises reasonably safe, but he will not be held liable if the plaintiff fails to heed open and obvious dangers." It is this distinction that lies at the crux of the present case.

## D. Post-contributory cases

What makes this case particularly difficult is that, in an attempt to be faithful to prior precedent, some of this Court's decisions that attempted to apply the open and obvious danger doctrine in a post-contributory era confused the issue inadvertently. One such opinion, which I authored, is *Williams v Cunningham Drug Stores, Inc*, 429 Mich 495; 418 NW2d 381 (1988). In *Williams*, a store customer was injured after fleeing the store directly behind an armed robber. The primary focus in *Williams* was whether a business owner has a duty to his invitees to insure against harm resulting from a third-party criminal act. However, in a portion of the

15

opinion I wrote that the duty a possessor of land owes his invitees "does not extend to conditions from which an unreasonable risk cannot be anticipated or to dangers so obvious and apparent that an invitee might be expected to discover them himself." *Id*. at 500. The statement was supported with a citation to Restatement § 343A. But it would have been more precise to say that liability would be suspended in such circumstances. A better explanation of the duty issue was presented by the opinion's discussion of § 343, which noted that invitors have a special relationship with invitees and that possessors of land owe a duty to their invitees to exercise reasonable care to protect invitees from an unreasonable risk of harm caused by a dangerous condition on the land.

A better approach to the Restatement is the one that I stated in a later opinion:

> When §§ 343 and 343A are read together, the rule generated is that if the particular activity or condition creates a risk of harm *only* because the invitee does not discover the condition or realize its danger, then the open and obvious doctrine will cut off liability if the invitee should have discovered the condition and realized its danger. On the other hand, if the risk of harm remains unreasonable, despite its obviousness or despite knowledge of it by the invitee, then the circumstances may be such that the invitor is required to undertake reasonable precautions. The issue then becomes the standard of care and is for the jury to decide. [*Bertrand* at 611.]

16

*Bertrand* indicated that *Williams* should not be read too broadly. *Bertrand* cited *Williams* for the proposition that an invitor is not relieved of the duty to exercise reasonable care to protect invitees against known or discoverable dangerous conditions, even in cases where there would be no duty to warn. *Bertrand* went on to say that a duty exists by virtue of the relationship between the parties, and then the opinion examined whether the duty had been breached.

I continue to believe that *Bertrand* correctly focused on liability and on breach. Yet, given the discussions of late, I think *Bertrand* also may have been less precise in its terminology than it could have been.

For example, at one point, I wrote,

> Under ordinary circumstances, the overriding public policy of encouraging people to take reasonable care for their own safety precludes imposing a duty on the possessor of land to make ordinary steps "foolproof." Therefore, the risk of harm is not unreasonable. However, where there is something unusual about the steps, because of their "character, location, or surrounding conditions," then the duty of the possessor of land to exercise reasonable care remains. If the proofs created a question of fact that the risk of harm was unreasonable, the existence of duty as well as breach become questions for the jury to decide. [*Id.* at 616-617.]

This portion of the opinion directly followed a discussion of cases decided under contributory negligence, and was an attempt to incorporate the language of some prior cases. A more correct statement of the law would have been that the

17

duty to exercise reasonable care is not breached in cases involving ordinary steps. In that context, it may have been more evident that *Bertrand's* "unusual" characteristics discussion related to the foreseeability and unreasonableness of the risk of harm, rather than creating a special new rule.

It should also be noted that the differing viewpoints I expressed in *Williams* and *Bertrand* are due in part to this Court's intervening decision in *Riddle v McLouth Steel Products*. The majority in *Riddle* held, in pertinent part, that an invitor has no duty to warn invitees of open and obvious dangers.

Justice Levin wrote a dissenting opinion, which I believe to be the more correct approach. In a nutshell, Justice Levin noted that the issue is a standard of care issue, not a duty issue. He also pointed out that the "no-duty" rule actually came about as one way of expressing that a plaintiff was contributorily negligent. The defendant's duty should be tied to the relationship between the parties, and that duty would be owed regardless of whether a comparative negligence or contributory negligence system is in place. A finding of comparative negligence would assume that the defendant was in fact negligent, because comparative negligence is used only as a tool for apportioning damages after a breach of duty on the part of the defendant has been found. The primary questions for the jury to resolve in premises liability cases are,

first, whether the defendant has breached his duty of care, and, second, whether his liability is somehow limited by the plaintiff's comparative negligence. It is within this framework that the Restatement approach to the open and obvious danger doctrine must be viewed. I agree with Justice Levin's approach.

### III. Why the Majority Approach is Wrong

In light of the principles underlying the open and obvious doctrine, I believe that it would be a serious mistake to rephrase the open and obvious rule in yet another imprecise fashion. I further believe that the majority is in error.

In support of the "special aspects" test, the majority offers the following quotation from *Bertrand* at 614:

> With the axiom being that the duty is to protect invitees from *unreasonable* risks of harm, the underlying principle is that even though invitors have a duty to exercise reasonable care in protecting their invitees, they are not absolute insurers of the safety of their invitees. *Quinlaven . . . .* Consequently, because the danger of tripping and falling on a step is generally open and obvious, the failure to warn theory cannot establish liability. However, there may be *special aspects* of these particular steps that make the risk of harm unreasonable, and, accordingly, a failure to remedy the dangerous condition may be found to have breached the duty to keep the premises reasonably safe. [Slip op at 5 (emphasis added).]

While *Bertrand* recognized that if a condition has special aspects that render it unreasonably dangerous, the possessor *may* be subject to liability; the quoted language in no way

19

implies that the possessor *only* has a duty to undertake reasonable precautions to protect his invitees when a condition has special aspects.

*Bertrand* was intended as an application of the Restatement approach to open and obvious dangers. Considered in the context of the language of the Restatement, it is clear that *Bertrand*'s focus was on whether the possessor failed to exercise reasonable care to protect his invitees against an unreasonable risk of harm flowing from a condition that the possessor knew about or should have discovered through the exercise of reasonable care, and whether the possessor should have expected that the invitees would not discover or realize the danger or would fail to protect themselves against it. Secondarily, *Bertrand* considered whether harm should have been anticipated by the possessor.

In my view, special aspects of a particular condition may be relevant to a determination whether liability should be imposed; however, consideration of special aspects should be made in the context of the Restatement test. For example, if a condition has special aspects that render it unusual, it is possible that a court could conclude that the possessor should have known that the condition could pose an unreasonable risk of danger to his invitees. If the court then concludes that the possessor knew about the condition or could have discovered it by the exercise of reasonable care, that the

possessor should have expected that the invitees would not discover or realize the danger or would fail to protect themselves against it, and that the possessor failed to exercise reasonable care in protecting his invitees, the court could hold that the defendant is subject to liability pursuant to § 343. Moreover, the special aspects of a particular condition on the land might be relevant to a determination whether the possessor should have anticipated that the condition on his land would cause harm to his invitees. If so, the liability shield of § 343A could be lifted.

In sum, while "special aspects" may be considered in determining whether liability should be suspended, the existence or absence of special aspects in a particular case will not necessarily be outcome determinative. Instead, pursuant to the Restatement, courts must focus on whether an unreasonable danger is presented, whether harm should be anticipated, and whether the duty of care has been breached.

## IV. An Alternative Approach

I believe that the appropriate questions that should be taken up in this case are those posed by the Restatement. I would conclude that the plaintiff has failed to establish that the pothole in the defendant's parking lot presented an unreasonable risk of harm. Because § 343 of the Restatement provides that a possessor can be liable *only* when a condition involves an unreasonable risk of harm, the plaintiff cannot

prevail.  Likewise, the plaintiff has failed to establish that the defendant should have anticipated that she would be injured by the pothole.  Rather, as the majority asserts, the pothole was the type of open and obvious condition that a reasonably prudent person would avoid.  Therefore, under § 343A, the defendant is not liable for the physical harm caused by the condition.

The plaintiff has failed to establish a material issue of fact.  The circumstances of this case reveal that the liability cannot be imposed against the defendant.  Therefore, I join the majority's decision to reverse.

KELLY, J., concurred with CAVANAGH, J.

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

ODIS LUGO,

    Plaintiff-Appellee,

v                                                                              No.  112575

AMERITECH CORPORATION, INC.,

    Defendant-Appellant.

_____

WEAVER, J. (*concurring*).

I concur in the result of the majority opinion. Plaintiff presented no evidence that the pothole was unreasonably dangerous despite its obviousness.

I write separately because the majority unnecessarily introduces—in dicta—a new standard by which open and obvious defects will be deemed unreasonably dangerous despite their open and obvious presence.  Rather than introduce new standards into the open and obvious doctrine, I would remain true to existing precedent.  See, e.g., *Riddle v McLouth Steel Products Corp*, 440 Mich 85, 96; 485 NW2d 676 (1992), and *Williams v Cunningham Drug Stores, Inc,* 429 Mich 495, 500; 418 NW2d 381 (1988).

The majority's new standard focuses on special aspects of

an open and obvious condition that give rise to the "unreasonable risk of *severe* harm." Slip op at 6 (emphasis added).[1] This standard has no precedent in Michigan's common law of the open and obvious doctrine. This Court has not suggested—until today—that the *degree* of potential harm is relevant to whether the risk of harm posed by a condition remains unreasonable despite its obviousness.

In an apparent effort to provide guidance to the bench and bar, the majority presents unlikely hypothetical examples. When launching new legal principles from a factual vacuum, it would be more helpful to apply this new severe-harm standard to an actual case that came before this Court, such as *Singerman v Municipal Service Bureau, Inc*, 455 Mich 135; 565 NW2d 383 (1997). *Singerman* was left unresolved by a three-three split. It is indeed unfortunate that the majority fails to take this opportunity to clarify its new standard by

---

[1]The majority also offers a new definition of dicta to justify its adoption of the new severe-harm standard. The majority states that "the lack of such special aspects [i.e., the unreasonable risk of severe harm] in the present case forms the basis of our holding that defendant was entitled to a grant of summary disposition in its favor." Slip op at 9, n 3. This explanation, in my view, acknowledges that the severe-harm standard is "dicta." "Dicta" is defined as "[o]pinions of a judge which do not embody the resolution or determination of the specific case before the court. Expressions in court's opinion which go beyond the facts before court and therefore are individual views of author and not binding in subsequent cases as legal precedent." Black's Law Dictionary, 6th ed. The severe-harm standard is not at issue on the facts of this case, is not briefed by the parties, and is not essential to the determination of this case.

2

application to the facts of this recent case.

In *Singerman*, the plaintiff alleging negligence sued the operator of a public hockey rink. Plaintiff was an experienced hockey player who joined or was observing a pick-up game. Plaintiff went onto the ice without protective equipment and, at one point, stood leaning on the goal net. As the scrimmage moved his way, plaintiff was hit in the eye by a puck shot on goal, and he sustained severe damage. Plaintiff testified that he saw the player take the shot, but was unable to avoid the puck because of poor lighting. The issue presented was whether the defendant should have anticipated the harm despite plaintiff's knowledge of the hazardous condition.

Because severe harm is inherent to hockey, indeed the plaintiff in *Singerman* lost an eye, it would seem under the majority's severe-harm standard the question whether the risk of harm caused by the lighting defect was unreasonable despite its obviousness would be for the jury. This, despite the fact that the lighting in the rink was alleged to be consistently inadequate and there was no chance that plaintiff would forget the potentially hazardous condition "because the condition was constantly before him." *Singerman* at 144 (WEAVER, J., opinion). I believe that *Singerman* was an appropriate case for summary disposition in favor of the defendant because the

3

open and obvious danger of the inadequate lighting was not unreasonably dangerous despite the potential for severe harm.

Contrary to the majority's suggestion that my position would allow "no tort claim [to] lie," slip op at 8, my position simply remains true to well-established articulations of the open and obvious doctrine. These articulations focus on circumstances that make a risk unreasonable despite its openness and obviousness, rather than on the nature of the potential harm. See, e.g., *Riddle*, *supra* at 96 (holding that "[w]here the dangers are known to the invitee or are so obvious that the invitee might reasonably be expected to discover them, an invitor owes no duty to protect or warn the invitee unless he should anticipate the harm despite knowledge of it on behalf of the invitee"); *Williams v Cunningham Drug Stores, Inc, supra* at 500 (stating that "[t]he duty a possessor of land owes his invitees is not absolute . . . . It does not extend to conditions from which an unreasonable risk cannot be anticipated or to dangers so obvious and apparent that an invitee may be expected to discover them himself. Furthermore, 'the occupier is not an insurer of the safety of invitees, and his duty is only to exercise reasonable care for their protection'").